983 A.2d 138

Beulah ADDISON

v.

LOCHEARN NURSING HOME, LLC
d/b/a/ Futurecare–Lochearn.

No. 134, Sept. Term, 2008.

Court of Appeals of Maryland.

Nov. 10, 2009.

252

254

F. Paul Bland (Claire Prestel, Public Justice of Washington, D.C., Phillip Robinson, Civil Justice, Inc., Baltimore), on brief, for Petitioner.

Melvin J. Sykes (Brown, Goldstein & Levy, LLP, Baltimore, Natalie Paige Drinkard, Pursel & Drinkard, LLC, Columbia), on brief, for Respondent.

C. Matthew Hill, Murnaghan Appellate Advocacy Fellow, Baltimore, Amici Curiae.

Kelly Bagby, AARP Foundation Litigation, Michael Schuster, AARP, Washington, DC, Dora Chen, Asst. Gen. Counsel, Service Employees International Union, Washington, DC, Cheryl L. Hystad, Legal Aid Bureau, Inc., Baltimore, Lauren Young, Maryland Disability Law Center, Baltimore, Amici Curiae.

Peter A. Holland, Holland Law Firm, Annapolis, Amici Curiae.

Jonathan Scott Smith, Jonathan Scott Smith, LLC, Columbia, Amicus Curiae.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, J.

In this case, we must address whether Section 12–303(3)(ix) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.),[1] permits an appeal of an order denying a motion to compel arbitration, in a case in which the circuit court judge also expressly denied a motion to certify the denial as a final judgment. We will answer that question in the negative, shall vacate the judgment of the Court of Special Appeals, and direct that the appeal be dismissed.

## I. Background

Lochearn Nursing Home, LLC, d/b/a FutureCare–Lochearn, Inc. (hereinafter "FutureCare"), Respondent, sued Beulah Addison, Petitioner, a resident of the nursing home, for $71,928.90[2] in delinquent "nursing home care and service" payments, in a breach of contract action brought in the Circuit Court for Baltimore City. Ms. Addison defended against the breach of contract claim by filing an Answer, asserting both negative and affirmative defenses, as well as a seven-count

1. All statutory references are to the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), unless otherwise stated.

2. FutureCare derived the $71,928.90 figure by multiplying the private-pay base rate of $171.00 per day times the number of days that Ms. Addison resided at the facility. Private-pay base rate is distinguished from the medical assistance rate. The latter, which is usually a lower rate, is generally paid to the nursing home directly by the State and Federal Government, using a pre-determined calculus: Maryland pays for nursing-care services under a "case-mix" system, meaning that "rather than paying all facilities one set rate, Medical Assistance calculates separate sets of rates for each facility. These rates depend on the individual facility's operating costs; the amount and type of care that each resident needs, and other factors." Maryland Department of Health and Mental Hygiene, Longterm Care: Medicaid Nursing Home Program, http://www.dhmh.state.md.us/ mma/longtermcare/html/NursingHomeFactSheet.htm (last visited Oct. 30, 2009).

Future Care also demanded an additional 15% for counsel fees, 18% in prejudgment interest and court costs, sought a writ of attachment before judgment over Ms. Addison's property in Baltimore City, and initiated administrative proceedings to evict her from the nursing home.

counterclaim,[3] alleging that she was unable to pay because one of FutureCare's employees, a social worker, embroiled her in a real estate "foreclosure rescue scam" that deprived her of the equity in her former home, which not only prevented her from paying the bill, but also from successfully applying for medical assistance, and that FutureCare mismanaged the filing of her Medicaid application.[4] FutureCare responded to Ms. Addi-

---

**3.** Ms. Addison's seven counterclaims against FutureCare included two counts of breach of fiduciary duty and one count each of negligent hiring and supervision, negligent misrepresentation, fraud, tortious breach of contract, and slander of title.

**4.** Medical Assistance, or Medicaid, was described by Judge John C. Eldridge, writing for this Court in *Jackson v. Millstone*, 369 Md. 575, 580–82, 801 A.2d 1034, 1036–38 (2002) (footnotes omitted) (alterations in original):

Congress enacted the Medicaid Act in 1965 as Title XIX of the Social Security Act. *See* 42 U.S.C. § 1396 *et seq.;* 42 C.F.R. § § 430–456. The Act was designed to enable states, as far as practicable, to furnish medical assistance to individuals whose income and resources are insufficient to meet the costs of necessary medical services. To that end, the Act established a medical assistance program, which is a jointly funded collaboration between the states and the federal government. It is a voluntary program, in which a state may elect, but is not compelled, to participate. When a state elects to participate in the medicaid program, it prepares and submits for approval by the federal Health Care Financing Administration, the federal agency that administers the Federal Medical Assistance Program, a state medicaid plan for the provision of medical assistance that complies with the federal Medicaid Act and with the regulations promulgated by the Secretary of the Department of Health and Human Services. *See* 42 U.S.C. § 1396a(a); 42 C.F.R. § § 430–456. If the federal agency approves the state plan, then the state qualifies for federal funding, whereby the federal government will reimburse the state up to 50% of the cost of the medicaid program. *See* 42 U.S.C. § 1396b(a); 42 U.S.C. § 1396d(b). The federal Office of Inspector General periodically audits state operations to determine whether the operations are "cost-efficient" and whether "[f]unds are being properly expended." 42 C.F.R. § 430.33(a).

While the federal government establishes broad policy, secures state compliance with the statute, and dispenses federal funds to supplement state spending on medicaid, there exists some latitude for each state to determine which of its citizens qualify for this form of medical insurance and which services its program will provide. The state agency charged with dispensing the state medicaid program is responsible for interpreting, administering, and complying with federal medicaid statutes and regulations. Within broad federal rules,

son's Counterclaim by filing an Answer generally denying liability. FutureCare also filed a "Motion to Compel Arbitration of Counterclaims, Motion to Stay, and Request for Attorney's Fees," asserting that the Resident and Facility Arbitration Agreement, signed by Ms. Addison upon her entry to the nursing home, required her to submit her counterclaims to arbitration. After a hearing, the judge denied FutureCare's arbitration motion, after which FutureCare requested that the order denying the motions be certified as a final judgment

each state decides eligibility groups, types and range of services, payment levels for services, and administrative and operating procedures.

Maryland has chosen to participate in the medicaid program. It does so through the Maryland Medical Assistance Program, operated by the Department of Health and Mental Hygiene. *See* Maryland Code (1982, 2000 Repl.Vol., 2001 Supp.) § 15–103 of the Health General Article. The program's director, or a designee, is responsible for the approval or denial of applications for preauthorization for payment. Preauthorization, or approval from the Department, is required before one can receive medical assistance benefits. *See* COMAR 10.09.06.01B(30).

Although the federal Medicaid Act only mandates that states provide medical assistance for those classified as "categorically needy," Maryland's state plan is designed to provide comprehensive health care services for "categorically needy" and "medically needy" persons. *See* § § 15–201.1, 15–103 of the Health–General Article; CO-MAR 10.09.06.01B(21). *See also* 42 U.S.C. § 1396a(a)(10)(A), (C) (listing those who qualify as "categorically" and "medically" needy, respectively). Under the Maryland Medicaid Plan, "categorically needy" includes "aged, blind, or disabled persons, or families and children, who are otherwise eligible for Medical Assistance and who meet the financial eligibility requirements for FIP, SSI, or Optional State Supplement." COMAR 10.09.24.02B(11). Essentially, "categorically needy" persons are those whose income levels are so low that they qualify to receive cash assistance from an approved state program, and they cannot afford to pay for basic needs or medical assistance. The "medically needy," on the other hand, are "persons who are otherwise eligible for Medical Assistance, who are not categorically needy, and whose income and resources are within the limits set under the [s]tate [p]lan." COMAR 10.09.24.02B(38). *See Jaffe v. Sharp*, 463 F.Supp. 222 (D.Mass.1978) (defining the "medically needy" as individuals and families whose income exceeds that of categorically needy but is nevertheless insufficient to cover medical care). Included among the "medically needy" under the Maryland

under Rule 2–602(b). The judge denied the motion to certify the order as final.

FutureCare, nevertheless, appealed immediately to the Court of Special Appeals, challenging the denial of its motion to compel arbitration and for a stay. Ms. Addison responded by filing a "Motion to Dismiss the Interlocutory Appeal" in that court, arguing that there was no final judgment on all claims within the meaning of Rule 2–602 and that, therefore, the appeal was premature. The Chief Judge of the Court of Special Appeals denied the motion, stating that Section 12–303(3)(ix) [5] permits an interlocutory appeal of an order "granting a petition to stay arbitration pursuant to § 3–208 [6] of this article," and that, "[t]here is little difference between the denial of a motion to arbitrate and a CJ § 12–303(3)(ix) order staying arbitration: both stop arbitration. *See Essex Corp. v. Susan Katharine Tate Burrowbridge, LLC, et. al,* [178 Md.

---

Medical Assistance Plan are persons under the age of 21. COMAR 10.09.24.03D(2).

**5.** Section 12–303 lists interlocutory orders from which appeals may be taken and provides in pertinent part:

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

* * *

(3) An order:

* * *

(ix) Granting a petition to stay arbitration pursuant to § 3–208 of this article

**6.** Section 3–208 governs petitions to stay arbitration and provides:

(a) *Petition to stay.*—If a party denies existence of the arbitration agreement, he may petition a court to stay commenced or threatened arbitration proceedings.

(b) *Filing of petition.*—(1) A petition to stay arbitration shall be filed with the court where a petition to order arbitration has been filed. (2) If a petition for order to arbitrate has not been filed, the petition to stay arbitration may be filed in any court subject to venue provisions of Title 6 of this article.

(c) *Determination of existence of arbitration agreement.*—If the court determines that existence of the arbitration agreement is in substantial and bona fide dispute, it shall try this issue promptly and order a stay if it finds for the petitioner. If the court finds for the adverse party, it shall order the parties to proceed with arbitration.

App. 17, 940 A.2d 199 (2008) ]." In the order, the Chief Judge also left open the opportunity for FutureCare, "to request in its brief that a Panel of [the intermediate appellate court] enter a final judgment pursuant to Maryland Rule 8–602(e)(1) on the circuit court's arbitration ruling, as happened in *Essex Corp., supra.*" After oral argument,[7] a panel of the Court of Special Appeals, in an unpublished opinion, acceded to Future-Care's request as to the circuit court order denying Future-Care's motion to compel arbitration and certified it as final.

The Court of Special Appeals reversed the circuit court judge's denial of FutureCare's Motion to Compel Arbitration, holding that ambiguity existed regarding whether the counter-claim fell within the arbitration clause and remanded the case with instructions for the circuit court to enter an order compelling arbitration and staying litigation. In so ordering, the intermediate appellate court, nevertheless, remained cognizant of the public policy dimension of an arbitration agreement involving a nursing home patient:

> In concluding that the ambiguity of key terms of the agreement require us to defer their interpretation to an arbitrator, we are not unmindful of the fact that the use of arbitration provisions in nursing home contracts is a matter of public concern. In addition, two bills are moving through Congress to make unenforceable all pre-dispute, mandatory binding arbitration clauses in contracts between long-term care facilities and their residents. Nevertheless, the present state of Maryland law on arbitration leaves us no other course.

(Internal citations omitted). Ms. Addison thereafter petitioned this Court for a writ of certiorari, which we granted, 406 Md. 743, 962 A.2d 370 (2008), to address the following question:

---

**7.** Before oral argument, Ms. Addison filed a petition for a writ of certiorari asking us to review the case in advance of oral argument in the intermediate appellate court, which we denied. *Addison v. Lochearn*, 405 Md. 62, 949 A.2d 651 (2008).

Did the Court of Special Appeals err in compelling arbitration of claims arising from a predatory real estate scam and sabotaged Medicaid application?

After argument before us, we requested the parties to submit supplemental briefs and to argue an additional issue:

Assuming that the denial of the motion to compel arbitration and to stay the judicial proceedings in the present case is not appealable as a final judgment, does Section 12–303(3)(ix) of the Courts and Judicial Proceedings Article permit an appeal as an appealable interlocutory order?

We shall not address the merits of this controversy as raised by the original certiorari question, but will vacate the judgment of the Court of Special Appeals and direct that Future-Care's appeal be dismissed, because the Court of Special Appeals could not certify the circuit court order as final, after the circuit court judge had refused to do so, and the denial of the motion to compel arbitration does not constitute an appealable interlocutory order or collateral order from which FutureCare could appeal.

## II. Discussion

### A. Final Judgment

 Generally, under Section 12–301,[8] a party may appeal only from a final judgment entered in a civil or criminal case by a circuit court. A "final judgment" is "a judgment, decree, sentence, order, determination, decision, or other action by a court ... from which an appeal ... may be taken." Section 12–101(f). We have often stated that our jurisdiction is defined by statute, and that appeals must be taken from final judgments, except under certain limited exceptions, as Judge Irma S. Raker, writing for this Court in *Gruber v.*

---

**8.** Section 12–301 of the Courts and Judicial Proceedings Article provides in pertinent part:

Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court.

*Gruber,* 369 Md. 540, 546, 801 A.2d 1013, 1016 (2002), succinctly stated:

> This Court has often stated that, except as constitutionally authorized, appellate jurisdiction "is determined entirely by statute, and that, therefore, a right of appeal must be legislatively granted." *Kant v. Montgomery County,* 365 Md. 269, 273, 778 A.2d 384, 386 (2001). Where appellate jurisdiction is lacking, the appellate court will dismiss the appeal on its own motion. *Highfield Water Co. v. Washington County Sanitary Dist.,* 295 Md. 410, 414, 456 A.2d 371, 373 (1983).

It is well settled that with exceptions not relevant here, an appeal may be taken to the Court of Special Appeals under Maryland Code (1957, 1998 Repl.Vol., 2001 Supp.) § 12–301 of the Courts and Judicial Proceedings Article only from a "final judgment entered in a civil or criminal case by a circuit court." *See Taha v. Southern Mgmt. Co.,* 367 Md. 564, 790 A.2d 11 (2002); *O'Brien v. O'Brien,* 367 Md. 547, 790 A.2d 1 (2002). Except for the limited category of exceptions codified in § 12–303 or under the collateral order doctrine, an appeal will not lie from an interlocutory order entered in a civil case. *Philip Morris, Inc. v. Angeletti,* 358 Md. 689, 713, 752 A.2d 200, 213 (2000). We have often stated that the underlying policy of the final judgment rule is to avoid piecemeal appeals. *See Brewster v. Woodhaven Bldg. & Dev.,* 360 Md. 602, 616, 759 A.2d 738, 745 (2000). Whether a matter is appealable is a jurisdictional matter and may be raised by an appellate court even if not noted by the parties. *See, e.g., In re Franklin P.,* 366 Md. 306, 326, 783 A.2d 673, 685 (2001).

A ruling of the circuit court, to constitute a final judgment, must, among other things, be an "unqualified, final disposition of the matter in controversy." *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767, 773 (1989). An order merely assuming jurisdiction in a matter does not constitute such a decision.

■ The certification as final of the denial of the motion to compel arbitration in the instant case, entered by a panel of the Court of Special Appeals under Rule 8–602(e),[9] however, directly contravened the *denial* by the circuit court judge to certify the same order as final earlier in the litigation, and as such, must be vacated in light of our holdings in *Brown & Williamson Tobacco Corp. v. Gress,* 378 Md. 667, 838 A.2d 362 (2003), and *Silbersack v. ACandS, Inc.,* 402 Md. 673, 938 A.2d 855 (2008). *Gress* was a wrongful death action against asbestos and cigarette manufacturers, among others, in which it was alleged that the decedent's lung cancer was caused by a "synergy" or multiplied risk created by tobacco product-use and workplace exposure to asbestos. The tobacco defendants moved to dismiss or to sever the action from the asbestos claims, which the circuit court judge granted. The decedent's representatives requested that the judge certify the dismissal order as a final judgment, which the judge refused to do. The decedent's representatives, nevertheless, immediately appeal-

---

**9.** Rule 8–602(e) governs the entry of a final judgment by an appellate court and

> (e) **Entry of judgment not directed under Rule 2–602.** (1) If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may, as it finds appropriate, (A) dismiss the appeal, (B) remand the case for the lower court to decide whether to direct the entry of a final judgment, (C) enter a final judgment on its own initiative or (D) if a final judgment was entered by the lower court after the notice of appeal was filed, treat the notice of appeal as if filed on the same day as, but after, the entry of the judgment.
>
> (2) If, upon remand, the lower court decides not to direct entry of a final judgment pursuant to Rule 2–602(b), the lower court shall promptly notify the appellate court of its decision and the appellate court shall dismiss the appeal. If, upon remand, the lower court determines that there is no just reason for delay and directs the entry of a final judgment pursuant to Rule 2–602(b), the case shall be returned to the appellate court after entry of the judgment. The appellate court shall treat the notice of appeal as if filed on the date of entry of the judgment. (3) If the appellate court enters a final judgment on its own initiative, it shall treat the notice of appeal as if filed on the date of the entry of the judgment and proceed with the appeal.

ed to the Court of Special Appeals, and the intermediate appellate court, based upon Rule 8–602(e)(1)(C), did what the circuit court judge had refused to do and entered a final judgment on the denial of the motion to dismiss, before reversing the judgment. *Gress v. ACandS,* 150 Md.App. 369, 820 A.2d 616 (2003). We granted the tobacco defendants' petition for certiorari.

In *Gress,* then, we faced the same issue that we must address in the present case—namely, "whether the Court of Special Appeals has the authority to enter final judgment pursuant to Maryland Rule 8–602(e)(1)(C) when the trial court, that could have entered final judgment pursuant to Maryland Rule 2–602(b), has expressly refused to do so...." *Gress,* 378 Md. at 675–76, 838 A.2d at 367. We held that the Court of Special Appeals lacked such authority, based upon our interpretation of Rule 8–602(e)(1)(C).

 The basis for the *Gress* holding was in Rule 8–602(e), which only permits appellate certification as final when the judge overlooked the opportunity to certify, not when the judge acted and refused to certify. *Id.* at 677–78, 838 A.2d at 368. As we stated in *Gress:*

> We hold that where a trial court has been invited to direct entry of a final judgment in a case in which that trial court has discretion to do so and that trial court expressly declines to do so, and the merits of that ruling is not appealed, Rule 8–602(e)(1)(C) does not authorize an appellate court nevertheless to enter final judgment on its own initiative.

*Id.* at 682, 838 A.2d at 371 (footnote omitted). In reaching this holding, we interpreted the use of the past tense in subsection (e)(1), regarding when a final judgment can be entered by an appellate court, as limiting appellate entry of a final judgment to those "situation[s] in which the trial court has not entered final judgment and, indeed, in which the trial court has not considered the issue." *Id.* at 677–78, 838 A.2d at 368. We explained that it would be inconsistent and illogical, moreover, to include subsection (e)(2), prescribing the procedure for remanding to the trial court, if an appellate court

unilaterally could enter a final judgment after the trial judge had considered the issue under subsection (e)(1):

> If still further confirmation is necessary, subsection (e)(2) supplies it. That subsection further addresses the situation in which the case is remanded for the trial court to determine whether to direct the entry of final judgment. It instructs that when "the lower court decides not to direct the entry of a final judgment pursuant to Rule 2–602(b), the lower court shall promptly notify the appellate court of its decision and the appellate court shall dismiss the appeal." If dismissal is required where the case has been remanded for a determination of whether a final judgment should be directed to be entered, it follows that the same requirement must apply when, as in this case, the trial court has been invited to consider the same issue after a premature appeal has been noted, and the trial court has not only considered the desirability of certification, but rejected it. A different construction renders the Rule internally inconsistent and, in truth, illogical.

*Id.* at 678, 838 A.2d at 368. We also reviewed the history of Rule 8–602(e), explaining that subsection (e) "was intended to deal with the vexing problem of premature appeals," and more specifically, was intended to permit the appellate court to enter final judgment when no determination was made by the circuit court, so that an appellate court could enter a final judgment and rule on the merits without first having to remand the case to circuit court with instructions to enter a final judgment:

> Section (e) deals with the Rule 2–602 problem. Essentially, it permits the appellate court, instead of simply dismissing the appeal as it does now, to return the case to the Circuit Court in compliance with Rule 2–602. If the Circuit Court makes the required determination, the appeal can proceed; otherwise it will be dismissed. The Rule also permits the appellate court to enter a final judgment on its own initiative and to proceed with the appeal without returning the case to the Circuit Court.

*Id.* at 679–80, 838 A.2d at 369–70 (footnote omitted), quoting Reporter's Note to Rule 8–602(e). As a result, we were clear in *Gress* that only when a trial judge had not acted to refuse certification would an appellate court be able to certify finality.

We reinforced our holding in *Gress* recently in *Silbersack*, 402 Md. 673, 938 A.2d 855, and answered the question of whether, even when the merits of a circuit court judge's refusal to certify is appealed, an appellate court can reverse and direct certification—a question that had been lurking since *Gress*. *Silbersack* presented a nearly identical factual situation as *Gress*, in which the spouse of a man who died of lung cancer attempted to join tobacco and asbestos defendants in the same suit. After the asbestos defendants had been removed from the case, either by bankruptcy stay or settlement, Silbersack moved to "reinstate" the tobacco defendants, and the trial judge denied her motion, after which she asked the judge to certify his denial as a final judgment, which the judge also refused to do. Silbersack appealed from the order denying the motion to "reinstate," and we granted certiorari prior to any proceedings in the Court of Special Appeals.

Before this Court, Silbersack argued that we should remand the case to the circuit court and mandate that the judge enter a final judgment under Rules 2–601 [10] and 2–602(b),[11] so that

---

**10.** Rule 2–601 governs the entry of judgments:

(a) **Prompt entry—Separate document.** Each judgment shall be set forth on a separate document. Upon a verdict of a jury or a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith prepare, sign, and enter the judgment, unless the court orders otherwise. Upon a verdict of a jury or a decision by the court granting other relief, the court shall promptly review the form of the judgment presented and, if approved, sign it, and the clerk shall forthwith enter the judgment as approved and signed. A judgment is effective only when so set forth and when entered as provided in section (b) of this Rule. Unless the court orders otherwise, entry of the judgment shall not be delayed pending determination of the amount of costs.

(b) **Method of entry—Date of judgment.** The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.

she could then appeal from the order. We refused to do so. In reaching our conclusion, we discussed "bedrock" principles of appellate jurisdiction and most notably, that ordinarily, appellate jurisdiction is dependent upon "the entry of a final judgment that disposes of all claims against all parties":

> To set the context, there is a long-standing bedrock rule of appellate jurisdiction, practice, and procedure that, unless otherwise provided by law, the right to seek appellate review in this Court or the Court of Special Appeals ordinarily must await the entry of a final judgment that disposes of all claims against all parties.

*Id.* at 678, 938 A.2d at 858 (citations omitted). We placed the general rule within the context of Rule 2–602, explaining that Rule 2–602(a) embodies the general rule:

> Rule 2–602(a), subject to an exception provided for in section (b) of that Rule, makes clear that an order or decision "that adjudicates fewer than all of the claims in an action . . . or that adjudicates the rights and liabilities of fewer than all of the parties to the action: (1) is not a final

---

(c) **Recording and indexing.** Promptly after entry, the clerk shall (1) record and index the judgment, except a judgment denying all relief without costs, in the judgment records of the court and (2) note on the docket the date the clerk sent copies of the judgment in accordance with Rule 1–324.

11. Rule 2–602 governs "judgments not disposing of the entire action":
(a) **Generally.** Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
(1) is not a final judgment;
(2) does not terminate the action as to any of the claims or any of the parties; and
(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.
(b) **When allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
(1) as to one or more but fewer than all of the claims or parties; or
(2) pursuant to Rule 2–501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

judgment; (2) does not terminate the action as to any of the claims or any of the parties; and (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties."

*Id.* at 678, 938 A.2d at 858. We noted the limited exception provided in Rule 2–602(b), which permits a trial judge to certify as a final judgment an order not qualifying as final under 2–602(a), if "there is no just reason for delay," but we explicitly recognized that this act is to be reserved only for the "very infrequent harsh case":

> Rule 2–602(b) provides a limited exception. It allows the Circuit Court to order the entry of a judgment as to fewer than all of the claims or parties if the court expressly determines in a written order that "there is no just reason for delay." *For more than three decades, however, we have made clear that the discretion to enter judgment under Rule 2–602(b), or its predecessor Rule 605a, was to be reserved for the "very infrequent harsh case." Diener Enterprises v. Miller,* 266 Md. 551, 556, 295 A.2d 470, 473 (1972). We pointed out in *Smith v. Lead, supra,* 386 Md. 12, 25, 871 A.2d 545, 553 that the purpose of Rule 2–602(a) is to prevent piecemeal appeals "which, beyond being inefficient and costly, can create significant delays, hardship, and procedural problems." *We noted, among other things, that piecemeal appeals may cause the appellate court to be faced with having the same issues presented multiple times and may burden the parties with having to assemble records, file briefs and record extracts, and prepare and appear for oral argument on multiple occasions. That is "precisely why," we said, "Rule 2–602(b) is reserved for the 'infrequent harsh case,' and why the trial judge, who normally has a much better grasp of the situation than an appellate court, is viewed, at least in the first instance, as the 'dispatcher.' "* *Id.* at 26, 871 A.2d at 553.

*Id.* at 679, 938 A.2d at 858 (footnotes omitted) (emphasis added).

After addressing the limits of the circuit court judge's ability to certify as final, we reaffirmed the *Gress* holding regarding the inability of an appellate court to enter a final judgment in direct contravention of the judge's ruling. We recognized that requiring the circuit court judge to enter a final judgment under Rule 2–602(b), after the trial judge had explicitly declined to do so, would have the same effect as our own certification of a final judgment:

> Our reasoning [in *Gress* ] was clear and precise—that the appellate court's authority under Rule 8–602(e)(1)(C) to enter judgment on its own initiative may be exercised only when the circuit court has never exercised its own discretion in the matter and not when the trial court was asked to enter judgment under Rule 2–602(b) and expressly declined to do so:
>
> > We hold that where a trial court has been invited to direct entry of a final judgment in a case in which that trial court has discretion to do so and that trial court expressly declines to do so, and the merits of that ruling is not appealed, Rule 8–602(e)(1)(C) does not authorize an appellate court nevertheless to enter final judgment on its own initiative.
>
> *Id.* at 682, 838 A.2d at 371.

*Id.* at 681, 938 A.2d at 859. We emphasized various policy considerations that underpinned the notion that the trial judge is a "dispatcher" and the wide discretion accorded the judge to deny certification. *Id.* at 683–84, 938 A.2d at 861. We concluded that a request for mandamus review, itself separately granted,[12] may be more appropriate than one for certification as final on an appellate level:

> *[A]ny decision by the appellate court that the denial of a request to enter a Rule 2–602(b) judgment suffices under its*

---

12. In *Forster v. Hargadon,* 398 Md. 298, 308, 920 A.2d 1049, 1054 (2007) (internal quotations omitted), we stated that mandamus is an "extraordinary" writ that an appellate court "will not ... grant[ ] where the petitioner has a specific and adequate legal remedy to meet the justice of the particular case."

*criteria to constitute a final judgment will almost necessarily require a finding that the trial court abused its discretion in denying the request.* What would be presented, therefore, is the somewhat anomalous situation whereby the preliminary decision to review the ruling will amount to a determination that the ruling constituted an abuse of discretion. As a practical matter, the right to appeal translates into a right to win the appeal. If the Court is to travel that road, of effectively co-mingling the right to appeal with the merits of the appeal, it must be extremely cautious in doing so. *That kind of situation seems more appropriate to be presented in a petition for extraordinary relief through mandamus, which is also very rarely granted (see Forster v. Hargadon, 398 Md. 298, 920 A.2d 1049 (2007)), rather than an appeal.*

*Id.* at 685, 938 A.2d at 861–62 (emphasis added). In *Silbersack*, then, as well as *Gress*, we were clear that appellate authority to enter final judgment is limited to circumstances where the circuit court judge had overlooked certification, and even then, only in the "very infrequent harsh case[s]." *Id.* at 679, 681, 938 A.2d at 858–59.

Without distinguishing *Gress* or *Silbersack*, the Court of Special Appeals in the present case entered a final judgment under Rule 8–602(e)(1), relying on *Town of Chesapeake Beach v. Pessoa Construction Company, Inc.*, 330 Md. 744, 625 A.2d 1014 (1993). *Town of Chesapeake* involved a dispute between the Town of Chesapeake and a contractor, wherein the Town terminated the contract, and the contractor filed a demand for arbitration. The Town filed a petition to stay arbitration pursuant to Section 3–208, but the judge denied the petition and entered an order compelling arbitration. The Town immediately appealed to the Court of Special Appeals, which ultimately dismissed the appeal. We reversed and held that an order denying a petition to stay arbitration and thereby compelling arbitration was immediately appealable under both the final judgment rule and the collateral order doctrine, because the petition to stay arbitration involved a separate

demand and operated to put parties "out of court." *Id.* at 750–54, 625 A.2d at 1017–20.

In ruling that the order was appealable as a final judgment, we discussed *Horsey v. Horsey,* 329 Md. 392, 620 A.2d 305 (1993), in which we held that a judge's order is final and appealable when it "has the effect of putting parties out of court":

> [A] trial court's order sometimes may constitute a final appealable judgment even though the order fails to settle the underlying dispute between the parties. Where a trial court's order has "the effect of putting the parties out of court, [it] is a final appealable order." *Houghton v. County Comm'rs. of Kent Co.,* 305 Md. 407, 412, 504 A.2d 1145, 1148 (1986), and cases there cited. *See, e.g., Wilde v. Swanson,* 314 Md. 80, 85, 548 A.2d 837, 839 (1988) ("An order of a circuit court ... [may be] a final judgment without any adjudication by the circuit court on the merits"); *Doehring v. Wagner,* 311 Md. 272, 275, 533 A.2d 1300, 1301–1302 (1987) (trial court's order "terminating the litigation in that court" was a final judgment); *Walbert v. Walbert,* 310 Md. 657, 661, 531 A.2d 291, 293 (1987) (circuit court's unqualified order was a final judgment because it "put Denise Walbert out of court, denying her the means of further prosecuting the case at the trial level"); *Houghton v. County Com'rs of Kent Co.,* 307 Md. 216, 221, 513 A.2d 291, 293 (1986); *Concannon v. State Roads Comm.,* 230 Md. 118, 125, 186 A.2d 220, 224–225 (1962), and cases there cited.

*Town of Chesapeake,* 330 Md. at 750–51, 625 A.2d at 1017, quoting *Horsey,* 329 Md. at 401–02, 620 A.2d at 310. We then stated the importance of the fact that a petition to stay arbitration can be "filed as a separate action," and that, "if we should determine that the order denying a stay of arbitration constitutes a final judgment, we may certify that order as a final judgment, notwithstanding that it does not finally dispose of all claims in the action in which it was filed. *See* Maryland Rules 2–602 and 8–602(c)." *Id.* at 752–53, 625 A.2d at 1018. We also relied on *Litton Bionetics v. Glen Construction Company, Inc.,* 292 Md. 34, 437 A.2d 208 (1981), a case

involving a judge's refusal to consolidate arbitration proceedings, where we stated, similar to in *Horsey*, that an appellate court may have the authority to enter a final judgment, when an order denies all relief to a party and completely terminates the circuit court action:

> The present Maryland Uniform Arbitration Act does not expressly deny the right of appeal from a final judgment entered by a court in the exercise of jurisdiction under that statute. Thus, the question is simply whether the order appealed from constitutes a final judgment. Because the order denied all of the relief sought by Litton and completely terminated the action in the circuit court, it is an appealable final judgment.

*Town of Chesapeake Beach*, 330 Md. at 754, 625 A.2d at 1019, quoting *Litton*, 292 Md. at 41–42, 437 A.2d at 212 (citation omitted). The Town had been effectively "put out of court," and we elected to enter final judgment pursuant to Rule 8–602(e)(1) and to entertain the merits of the Town's appeal:

> In the case before us, as in *Litton Bionetics*, the order denying the stay of arbitration denied all of the relief sought by the petition and completely terminated the claim brought pursuant to § 3–208 of the Courts Article. Notwithstanding that the petition was filed in an existing action, it involves a separate claim which we elect to enter as a final judgment pursuant to Rule 8–602(e)(1).

*Id.* at 752–754, 625 A.2d at 1018–19. In using *Town of Chesapeake* to support the certification as final of the denial of the arbitration motion, the intermediate appellate court not only eviscerated our holdings in *Gress* and *Silbersack*, but reflected a misinterpretation of our holding in *Town of Chesapeake*, itself.[13] In Town of Chesapeake, we entertained certifi-

---

13. Two prior cases of the Court of Special Appeals, cited in support of its holding in the present case, also reflect the same misapplication of *Town of Chesapeake*. *See Essex Corp. v. Susan Katharine Tate Burrowbridge, LLC*, 178 Md.App. 17, 29–30, 940 A.2d 199, 205–06 (2008) (using *Town of Chesapeake* to support appellate entry of final judgment to review a circuit court judge's denial of a motion to compel arbitration, even though the denial kept parties in court); *NRT Mid–Atlantic, Inc. v.*

cation of an order compelling arbitration as a final judgment because that order effectively put parties out of court. By contrast, an order *denying* a motion to compel arbitration, which effectively keeps parties in court, is not a final judgment. *Town of Chesapeake*, therefore, is inapposite to the present case.[14]

## B. Interlocutory Orders

There are limited exceptions to the final judgment rule; in *Salvagno v. Frew*, 388 Md. 605, 615, 881 A.2d 660, 666 (2005), Judge Alan M. Wilner, writing for the Court, identified them as:

> [W]e have made clear that the right to seek appellate review of a trial court's ruling ordinarily must await the entry of a

*Innovative Properties, Inc.*, 144 Md.App. 263, 275–78, 797 A.2d 824, 831–33 (2002) (same).

14. In fact, in the present case, the trial judge may not have been able to certify the denial of the motion to compel arbitration as a final judgment, because the counterclaim involved the same set of facts as the complaint and thereby constituted a single claim within the meaning of Rule 2–602(a) (previously Rule 605). *See County Comm'rs for St. Mary's County v. Lacer*, 393 Md. 415, 426, 903 A.2d 378, 384 (2006) ("[T]he trial court would not be authorized to finalize an order unless, by its nature, that order was final as to a single claim or party."), quoting *Medical Mutual v. B. Dixon Evander & Assoc.*, 331 Md. 301, 308–09, 628 A.2d 170, 173–74 (1993) ("This Court has repeatedly held that an order which disposes of only a part of a single claim cannot be made final under Rule 2–602 or its predecessor rule") (internal citations and quotations omitted); *see also East v. Gilchrist*, 293 Md. 453, 459–60, 445 A.2d 343, 346 (1982) (holding that only a single claim for relief was presented when the counterclaim involved the same facts as the plaintiff's claim, because "[d]ifferent legal theories for the same recovery, based on the same facts or transaction, do not create separate 'claims' for purposes of [Rule 605]"); *Biro v. Schombert*, 285 Md. 290, 295, 402 A.2d 71, 74 (1979) (alternate legal theories "based upon one matter or transaction" do not give rise to separate claims); *Diener Enterprises, Inc. v. Miller*, 266 Md. 551, 556, 295 A.2d 470, 473 (1972) ("[T]he 'claims' stated by using two counts is actually but one claim that was framed in two ways so as to present either one of two legal theories for one recovery."). In *Gress* and *Silbersack*, unlike the present case, there were separate claims involving multiple parties within the meaning of Rule 2–602(a).

We need not address this issue, however, because the circuit court judge did not certify the judgment as final.

final judgment that disposes of all claims against all parties, and that there are only three exceptions to that final judgment requirement: appeals from interlocutory orders specifically allowed by statute; immediate appeals permitted under Maryland Rule 2–602; and appeals from interlocutory rulings allowed under the common law collateral order doctrine.

Appeals from interlocutory orders specifically allowed by statute are those delineated in Section 12–303:

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

(1) An order entered with regard to the possession of property with which the action is concerned or with reference to the receipt or charging of the income, interest, or dividends therefrom, or the refusal to modify, dissolve, or discharge such an order;

(2) An order granting or denying a motion to quash a writ of attachment; and

(3) An order:

(i) Granting or dissolving an injunction, but if the appeal is from an order granting an injunction, only if the appellant has first filed his answer in the cause;

(ii) Refusing to dissolve an injunction, but only if the appellant has first filed his answer in the cause;

(iii) Refusing to grant an injunction; and the right of appeal is not prejudiced by the filing of an answer to the bill of complaint or petition for an injunction on behalf of any opposing party, nor by the taking of depositions in reference to the allegations of the bill of complaint to be read on the hearing of the application for an injunction;

(iv) Appointing a receiver but only if the appellant has first filed his answer in the cause;

(v) For the sale, conveyance, or delivery of real or personal property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court;

(vi) Determining a question of right between the parties and directing an account to be stated on the principle of such determination;

(vii) Requiring bond from a person to whom the distribution or delivery of property is directed, or withholding distribution or delivery and ordering the retention or accumulation of property by the fiduciary or its transfer to a trustee or receiver, or deferring the passage of the court's decree in an action under Title 10, Chapter 600 of the Maryland Rules;

(viii) Deciding any question in an insolvency proceeding brought under Title 15, Subtitle 1 of the Commercial Law Article;

**(ix) Granting a petition to stay arbitration pursuant to § 3–208 of this article;**

(x) Depriving a parent, grandparent, or natural guardian of the care and custody of his child, or changing the terms of such an order; and

(xi) Denying immunity asserted under § 5–525 or § 5–526 of this article.

(Emphasis added).

In interpreting Section 12–303 our goal is, as it always is in statutory interpretation, "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Barbre v. Pope,* 402 Md. 157, 172, 935 A.2d 699, 708 (2007); *Gen. Motors Corp. v. Seay,* 388 Md. 341, 352, 879 A.2d 1049, 1055 (2005). *See also Dep't of Health & Mental Hygiene v. Kelly,* 397 Md. 399, 419–20, 918 A.2d 470, 482 (2007). We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' " *Barbre,* 402 Md. at 172, 935 A.2d at 708; *Kelly,* 397 Md. at 420, 918 A.2d at 482. *See also Kane v. Bd. of Appeals of Prince George's County,* 390 Md. 145, 167, 887 A.2d 1060, 1073 (2005). If the language of the statute is clear and unambiguous, we need not look beyond the statute's

provisions and our analysis ends. *Barbre,* 402 Md. at 173, 935 A.2d at 708–09; *Kelly,* 397 Md. at 419, 918 A.2d at 482; *City of Frederick v. Pickett,* 392 Md. 411, 427, 897 A.2d 228, 237 (2006); *Davis v. Slater,* 383 Md. 599, 604–05, 861 A.2d 78, 81 (2004). In construing a statute, "[w]e neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Taylor v. NationsBank, N.A.,* 365 Md. 166, 181, 776 A.2d 645, 654 (2001). *See, e.g., Lamone v. Capozzi,* 396 Md. 53, 72, 912 A.2d 674, 685 (2006) ("[T]his Court ... first will look to the normal, plain meaning of the language, and, if the language is clear and unambiguous, it will not look past those terms.") (internal quotations omitted); *Stoddard v. State,* 395 Md. 653, 668, 911 A.2d 1245, 1254 (2006) ("When interpreting a statute, the ordinary, popular understanding of the English language dictates interpretation of its terminology.") (internal quotations omitted); *Blake v. State,* 395 Md. 213, 224, 909 A.2d 1020, 1026 (2006); *Sears v. Gussin,* 350 Md. 552, 562, 714 A.2d 188, 192 (1998) ("The words of the statute should be given their ordinary and commonly understood meaning"); *In re Special Investigation No. 236,* 295 Md. 573, 576, 458 A.2d 75, 76 (1983) ("[T]he Court considers the language of an enactment in its natural and ordinary signification. A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly."). "Occasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language." *Robey v. State,* 397 Md. 449, 454, 918 A.2d 499, 502 (2007), citing *Stanley v. State,* 390 Md. 175, 185, 887 A.2d 1078, 1084 (2005). "In such instances, we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments." *Id.*

Both FutureCare and Ms. Addison argue that the language of Section 12–303(3)(ix) is unambiguous. FutureCare argues that the dictionary definitions of "petition" and "stay" demon-

strate that Ms. Addison's opposition to FutureCare's "Motion to Compel Arbitration" was, in fact, a "Petition to Stay Arbitration," and that the denial of FutureCare's Motion to Compel Arbitration was equivalent to the grant of a petition to stay arbitration. FutureCare further argues that the legislative history of the Section confirms its interpretation.

Ms. Addison argues that an order denying a motion to compel arbitration is not an appealable interlocutory order because Section 12–303 explicitly identifies an order granting a petition to stay arbitration as an appealable interlocutory order, but excludes orders denying motions to compel arbitration. Ms. Addison explains that, "[n]o ordinary or commonly understood meaning of 'petition to stay arbitration' includes a 'petition to stay *litigation*' or to '*compel* arbitration.'" (emphasis in original).

Section 12–303(3) includes eleven specific interlocutory orders from which an appeal may be taken, none of which identifies a "motion to compel arbitration," while the grant of a stay of arbitration is explicitly identified in Section 12–303(3)(ix). When a statute expressly sets forth certain exceptions to the coverage of the enactment, this Court "cannot disregard the mandate of the Legislature and insert an exception, where none has been made by the Legislature," *Johnson v. Baltimore,* 387 Md. 1, 15, 874 A.2d 439, 447–48 (2005) (holding that statutory language providing an exception for firefighters suffering from a particular occupational disease to collect dual workers compensation benefits was unambiguous and did not provide the same exception to the dependents of those individuals), quoting *Schmeizl v. Schmeizl,* 186 Md. 371, 375, 46 A.2d 619, 621 (1946). *See, e.g., Nasseri v. Geico,* 390 Md. 188, 198, 888 A.2d 284, 290 (2005) (Where there are "exceptions . . . expressly authorized by the Legislature, this Court has consistently" refused to recognize "exceptions [to statutorily mandated insurance coverage] which were not authorized by the Legislature") (internal quotations omitted); *Selig v. State Highway Admin.,* 383 Md. 655, 672, 861 A.2d 710, 720 (2004) ("When the legislature has expressly enumer-

ated certain exceptions to a principle, courts ... should be reluctant thereafter to create additional exceptions."); *O'Connor v. Baltimore County*, 382 Md. 102, 113, 854 A.2d 1191, 1198 (2004) ("We will not ... insert language to impose exceptions ... not set forth by the legislature.") (internal quotations omitted); *Salamon v. Progressive Classic Ins. Co.*, 379 Md. 301, 311–15, 841 A.2d 858, 864–67 (2004) (holding that a car insurance company did not have authority to add a "pizza delivery exclusion" to its insurance contracts when such an exclusion was neither expressly nor implicitly listed as an allowable statutory exclusion to mandatory insurance statutes); *Lewis v. Allstate Ins. Co.*, 368 Md. 44, 48–51, 792 A.2d 272, 274–76 (2002) (holding an insurance policy provision which reduced the amount of uninsured motorist benefits, to which the insured is otherwise entitled, by the amount of money which the insurer had previously paid to the insured under a medical payments endorsement in the policy was not an exception expressly authorized by the Legislature).

The explicit inclusion of a grant of a motion to stay arbitration with respect to appealability while the concomitant exclusion of appealability of a denial of a motion to compel arbitration is buttressed by the 1973 recodification of the Maryland Uniform Arbitration Act,[15] in which the General Assembly removed the denial of a motion to compel arbitration from the list of interlocutory orders from which an appeal could be taken. In 1973, the Maryland Uniform Arbitration Act was situated in Sections 1 to 23 of Article 7, Maryland Code (1957, 1968 Repl.Vol.). Section 2 of Article 7 controlled judicial authority to order or stay arbitration upon application of a party for arbitration. Section 18 of Article 7 provided that an appeal could be taken from both an order denying an applica-

---

15. Arbitration in Maryland is governed by the Maryland Uniform Arbitration Act, which was "purposefully meant to mirror the language of the [Federal Arbitration Act, 9 U.S.C. §§ 1–16 (2009)]." *Walther v. Sovereign Bank*, 386 Md. 412, 423–24, 872 A.2d 735, 742 (2005). The Act is currently located in Sections 3–201 to 3–234 of the Courts and Judicial Proceedings Article.

tion to compel arbitration and an order granting an application to stay arbitration:

(a) An appeal may be taken from:

(1) An order denying an application to compel arbitration made under § 2;

(2) An order granting an application to stay arbitration made under § 2(b);

(3) An order confirming or denying confirmation of an award;

(4) An order modifying or correcting an award;

(5) An order vacating an award without directing a rehearing; or

(6) A judgment or decree entered pursuant to the provisions of this article.

(b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

Included in the reports to the General Assembly from the Commission to Revise the Annotated Code, was a proposed recodification of the Maryland Uniform Arbitration Act into a newly entitled Courts and Judicial Proceedings Article, most specifically, for our purpose, are those sections then and now codified as Sections 3–207, 3–208, and 12–303.

Section 3–207 controlled orders to arbitrate, was derived from former Article 7 Section 2(a), and was recodified and now provides:

(a) *Refusal to arbitrate.*—If a party to an arbitration agreement described in § 3–202 of this subtitle refuses to arbitrate, the other party may file a petition with a court to order arbitration.

(b) *Denial of existence of arbitration agreement.*—If the opposing party denies existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists.

(c) *Determination by court.*—If the court determines that the agreement exists, it shall order arbitration. Otherwise it shall deny the petition.

The Revisor's Note [16] to Section 3–207 stated:

This section is new language derived from Art. 7, § 2(a). Provisions of subsection (a) are separated from other provisions of § 2 to *emphasize the difference between the court's order with respect to an arbitration agreement and a stay of arbitration.*

(Emphasis added).

Section 3–208 controlled stays of arbitration, was derived from former Article 7 Sections 2(b) and (c), and was recodified and now provides:

(a) *Petition to stay.*—If a party denies existence of the arbitration agreement, he may petition a court to stay commenced or threatened arbitration proceedings.

(b) *Filing of petition.*—(1) A petition to stay arbitration shall be filed with the court where a petition to order arbitration has been filed. (2) If a petition for order to arbitrate has not been filed, the petition to stay arbitration may be filed in any court subject to venue provisions of Title 6 of this article.

(c) *Determination of existence of arbitration agreement.*— If the court determines that existence of the arbitration agreement is in substantial and bona fide dispute, it shall try this issue promptly and order a stay if it finds for the petitioner. If the court finds for the adverse party, it shall order the parties to proceed with arbitration.

The Revisor's Note to Section 3–208 provided:

This section is new language derived from Art. 7, § 2(b) and (c). The term "petition" is substituted for "application" in

---

**16.** All references to Revisor's Notes are to 1973 Maryland Laws, Special Session, Chapter 2.

accordance with Art. 7, § 15. *The reorganization of provisions has been made to emphasize diversity.*

(Emphasis added).

The list of appealable interlocutory orders, formerly located in Section 18 of Article 7, was recodified as Section 12–303. The only order explicitly mentioning arbitration was and continues to be in Section 12–303(3)(ix), which permits a party to appeal an order "[g]ranting a petition to stay arbitration pursuant to § 3–208 of this article"; its Revisor's Note stated:

In addition, paragraph (9) [the section allowing an interlocutory appeal from an order "[g]ranting an application to stay arbitration pursuant to § 3–207"] picks up a provision of Art. 7, § 18. Sec. 18 deals with appeals with respect to arbitration and award. Most of its language deals with appeals from final judgments and is thus covered by § 12–301. The particular provision contained in paragraph (9) might authorize an appeal from an interlocutory judgment, and thus is included here. Art. 7, § 18 is proposed for repeal; see *Maietta v. Greenfield,* 267 Md. 287, 297 A.2d 244 (1972).

On this record, FutureCare argues that no substantive change was intended by the recodification, and the grant of a petition to stay arbitration must be construed as identical to a motion to compel arbitration. FutureCare cites, in this regard, to numerous reports from the Commission to Revise the Annotated Code,[17] and to our holding in *Welch v. Humphrey,*

---

**17.** FutureCare referred us to several reports including Report 3F to the General Assembly, dated July 16, 1973, in which the Commission stated:

The basic thrust of the Commission's work has to do with formal and not substantive changes. Nevertheless, at some points in its work, the Commission has found it necessary to make recommendations which do involve the substance of the laws. In a sense, the elimination of an obsolete provision is a substantive change. Also, where the Commission has discovered inconsistencies or gaps in the laws, it has sometimes made substantive recommendations in an effort to rectify the situation. This follows the Governor's directive to eliminate inconsistencies and conflicts.

200 Md. 410, 90 A.2d 686 (1952), for our approach to construing statutes resulting from a code revision:

> [T]he principal function of a Code is to reorganize the statutes and state them in a simpler form. Consequently any changes made in them by a Code are presumed to be for the purpose of clarity rather than change of meaning. Therefore, even a change in the phraseology of a statute by a codification thereof will not ordinarily modify the law, unless the change is so radical and material that the intention of the Legislature to modify the law appears unmistakably from the language of the Code.

*Id.* at 417, 90 A.2d at 689 (citation omitted).

Ms. Addison argues, conversely, that when the Legislature recodified the Maryland Uniform Arbitration Act, the deletion of the earlier provision allowing for interlocutory appeals from orders denying an application to compel arbitration was an appropriate alteration, because it was the Legislature's prerogative to allow appeals from interlocutory orders granting a stay of arbitration pursuant to Section 3–208 rather than from the denial of a motion to compel arbitration pursuant to Section 3–207. She urges that each State is free to choose its appellate procedures regarding arbitration, so long as those procedural rules do not undermine the objectives of arbitration, as we noted in *Wells v. Chevy Chase Bank,* 363 Md. 232, 246, 768 A.2d 620, 627 (2001).[18]

---

In every such case, the revisor's notes following the particular section explain the change and the reasons for it. Changes of this kind are also noted in this report.

**18.** We have held that because state courts are not bound by federal arbitration procedures, we "look to the pertinent Maryland law" for guidance. *Walther,* 386 Md. at 423, 872 A.2d at 742 (2005). Some of our sister states also distinguish between the appealability of the grant of a stay and that of the denial of a motion to compel. *See, e.g., Am. Gen. Fin. Servs. v. Vereen,* 282 Ga.App. 663, 639 S.E.2d 598, 600–01 (2006) (denial of motion to compel arbitration not immediately appealable unless order is certified by trial court and interlocutory appeal is accepted by appellate court); *Travelers Ins. Co. v. Gen. Elec. Co.,* 230 Conn. 106, 644 A.2d 346, 346–47 (1994) (denial of motion to stay litigation pending arbitration not immediately appealable).

The fact that the panel of the Court of Special Appeals opined that, "[t]here is little difference between the denial of a motion to arbitrate and a CJ § 12–303(3)(ix) order staying arbitration: both stop arbitration" does not dispose of the matter, because the grant of a motion to stay arbitration and the denial of a motion to compel arbitration must be identical in order to support FutureCare's approach, which they are not.

The grant of a stay of arbitration can be analogized to an order granting an injunction, which is appealable under Section 12–303(3)(i), because it defines the forum. A court's refusal to stay its own proceedings, intertwined with the denial of a motion to compel, on the other hand, is not equivalent to the denial of an injunction, because a forum is maintained. *See e.g., Highfield Water Co. v. Washington County Sanitary Dist.,* 295 Md. 410, 416, 456 A.2d 371, 374 (1983) ("[A] trial court's refusal to stay its own proceedings until the conclusion of another court case pending between the same parties ordinarily does not constitute the denial of an injunction.").[19] Rather, the denial of a motion to compel is often recognized as interlocutory and nonappealable, because it maintains the status quo and is reviewable at the conclusion of the case, after final judgment. *See, e.g., Sigma Reproductive Health Ctr. v. State,* 297 Md. 660, 667, 467 A.2d 483, 486 (1983) (listing numerous interlocutory and nonappealable orders). *See also County Comm'rs for St. Mary's County v. Lacer,* 393 Md. 415, 428, 903 A.2d 378, 386 (2006) ("This Court has consistently held that discovery orders, being interlocu-

---

**19.** The *Highfield* court noted that "[t]he rationale underlying this rule was expressed as long ago as 1897 . . . .":

> An injunction . . . operates upon the conduct of the parties and their attorneys, in respect to matters outside of those occurring in the ordinary progress of the action. A stay of proceedings operates in relation to something within the usual course of judicial proceedings, and which the court, by its authority over the parties and their attorneys, can regulate and control without resort to the extraordinary writ of injunction.

*Highfield,* 295 Md. at 417, 456 A.2d at 374–75, quoting *Rossiter v. Aetna Life Ins. Co. of Hartford, Conn.,* 96 Wis. 466, 71 N.W. 898, 899 (1897).

tory in nature, are not ordinarily appealable prior to a final judgment terminating the case in the trial court.") (internal quotations and citations omitted); *Brooks v. State*, 320 Md. 516, 527–28, 578 A.2d 783, 787–88 (1990) (Denial of motion to compel disclosure of State's informer reviewable on appeal after conviction); *Avery v. State*, 15 Md.App. 520, 535–38, 292 A.2d 728, 740–42 (1972) (Denial of motion to compel State to produce records reviewable on appeal after conviction).

*Granting* a stay of arbitration pursuant to Section 3–208—an explicitly listed appealable interlocutory order under Section 12–303—thus, would change the forum for dispute resolution from arbitration to the courts, and if filed in a separate action, could conceivably deny a forum altogether. The *denial* of a motion to compel arbitration pursuant to Section 3–207, however, keeps the parties in court, which may not preclude future arbitration. We note, in this regard, that the Legislature recognized the distinction by including the grant of a stay of arbitration in Section 12–303, but removing the denial of a motion to compel arbitration. The Revisor's Notes to Sections 3–207 and 3–208 explain that the changes pursuant to the recodification "emphasize the difference between the court's order with respect to an arbitration agreement and a stay of arbitration," and that "[t]he reorganization of provisions has been made to emphasize diversity."

## C. Collateral Order Doctrine

 The common law collateral order doctrine—a "judicially created fiction, under which certain interlocutory orders are considered to be final judgments, even though such orders clearly are *not* final judgments," *Dawkins v. Baltimore City Police Dept.*, 376 Md. 53, 64, 827 A.2d 115, 121 (2003) (emphasis in original) is also unavailing in this case. It is "a very narrow exception to the general rule that appellate review ordinarily must await the entry of a final judgment disposing of all claims against all parties," *Id.* at 58, 827 A.2d at 118, quoting *Pittsburgh Corning v. James*, 353 Md. 657, 660–661, 728 A.2d 210, 211–12 (1999), and generally permits an appeal from an order in a "small class" of cases in which the

interlocutory order sought to be reviewed satisfies four requirements: (1) it must conclusively determine the disputed question; (2) it must resolve an important issue; (3) it must be completely separate from the merits of the action; and (4) it must be effectively unreviewable on appeal from a final judgment. *See Dawkins,* 376 Md. at 58, 827 A.2d at 118; *Town of Chesapeake,* 330 Md. at 755, 625 A.2d at 1020. Judge John C. Eldridge, in *Washington Suburban Sanitary Commission v. Bowen,* 410 Md. 287, 296–97, 978 A.2d 678, 684 (2009), recently explained its extraordinary aspect:

> Time after time, this Court's opinions have emphasized that the collateral order doctrine is extremely narrow and that it is applicable only under extraordinary circumstances. *See, e.g., Hudson v. Housing Authority, supra,* 402 Md. at 25, 935 A.2d at 399 (The doctrine encompasses "a 'narrow' class of interlocutory orders in 'extraordinary circumstances' "); *St. Joseph's v. Cardiac Surgery, supra,* 392 Md. at 85, 896 A.2d at 310 (The doctrine applies "under extremely limited circumstances"); *Nnoli v. Nnoli, supra,* 389 Md. at 329, 884 A.2d at 1223 ("The collateral order doctrine is a very narrow exception to the final judgment rule, and each of its four requirements is very strictly applied in Maryland. * * * [It is inapplicable if the] case does not present an extraordinary situation"); *In re Foley,* 373 Md. 627, 634, 820 A.2d 587, 591, *cert. denied,* 540 U.S. 948, 124 S.Ct. 398, 157 L.Ed.2d 279 (2003)("[T]he doctrine may be entertained only in extraordinary circumstances").

(Alterations in original).

FutureCare, nevertheless, argues that the first three requirements of the collateral order doctrine are "satisfied," in the present case, and then contends that if its interlocutory appeal is not allowed, its "contractual right to the informal, expeditious and inexpensive forum" of arbitration would be "irretrievably lost" and unreviewable on appeal from a final judgment. Ms. Addison disputes the applicability vel non of the doctrine, but also hones in on the issue of whether the denial of the motion to compel arbitration would be effectively unreviewable on appeal from a final judgment.

Assuming litigation proceeds on the underlying matters of this case and a final judgment is entered on behalf of Ms. Addison, FutureCare's assertion of error regarding the denial of the motion to compel would be reviewable on appeal. *See Bowen,* 410 Md. at 297, 978 A.2d at 684–85 (stating that "claimed immunity from an adverse judgment would clearly be reviewable on appeal from a final judgment"); *See also Bloch v. Bloch,* 115 Md.App. 368, 375–80, 693 A.2d 364, 376–70 (1997) (vacating circuit court's judgment regarding alimony, reversing circuit court's denial of petition for arbitration, and remanding so that arbitration could proceed). FutureCare argues, however, that even success after an appeal from a final judgment would have subjected them to already unnecessary litigation with the added expense and inconvenience of a jury trial, in contravention of congressional intent, citing *Preston v. Ferrer,* 552 U.S. 346, ——, 128 S.Ct. 978, 986, 169 L.Ed.2d 917, 928 (2008) (arbitration after a trial "would likely be long delayed, in contravention of Congress' intent 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'"), quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Co.,* 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765, 784 (1983).

Concurrently, FutureCare asserts that national policy favoring arbitration "applies in state as well as federal courts" thereby "foreclos[ing] state legislative attempts to undercut the enforceability of arbitration agreements," citing *Preston, supra,* and *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Ms. Addison argues, conversely, that FutureCare is claiming no more than an "avoidance of trial" theory rejected by this Court, and the appealability of the circuit court's order "must be determined by Maryland law, not federal law," and contends that *Wells,* 363 Md. at 242, 768 A.2d at 625, in which we held that Maryland procedural law regarding appealability is not preempted by national policy supporting arbitration, supports its argument that we do not have to denigrate appellate procedure to facilitate arbitration. She propounds that arbitration agreements are on the "same footing" as other contracts, not on a *better*

footing, asserting that our dicta in *Koons Ford of Baltimore, Inc. v. Lobach*, 398 Md. 38, 50, 919 A.2d 722, 729 (2007) supports her argument. We agree with Ms. Addison that our procedural rules are not preempted by national policy favoring arbitration, as we have repeatedly stated. *Wells*, 363 Md. at 242, 768 A.2d at 625.

FutureCare, nevertheless, would have us find that this case falls "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated," *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528, 1536 (1949), but FutureCare ignores one major distinguishable characteristic of this case: FutureCare, while arguing for arbitration of Ms. Addison's counterclaim, is the same party that chose the circuit court in which to litigate its initial claim against Ms. Addison. It seems somewhat disingenuous to argue that the denial of the motion to compel arbitration will somehow force protracted litigation and extra expense for FutureCare when it is seeking to bifurcate the current dispute into two forums, which would vastly increase time and expense for the system and the parties.

Because the denial of a motion to compel arbitration could not be certified as a final judgment by the Court of Special Appeals after the circuit court judge denied the certification and cannot be considered as an appealable interlocutory or collateral order, we must vacate the judgment of the Court of Special Appeals and remand with instructions to dismiss the appeal.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE APPEAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.**