987 A.2d 1

**MILLER AND SMITH AT QUERCUS, LLC, et al.**

v.

**CASEY PMN, LLC.**

**No. 29 Sept. Term 2009.**

Court of Appeals of Maryland.

Jan. 11, 2010.

Reconsideration Denied March 8, 2010.

Paul T. Glasgow (Samantha M. Williams and Kristin M. Koger of Venable LLP of Rockville), on brief, for petitioners.

Paul A. Kaplan (James W. Gladstone of Womble, Carlyle, Sandridge & Rice, PLLC of Washington, D.C.), on brief, for respondent.

Argued before Bell, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

BATTAGLIA, J.

In 1998, Miller and Smith, a Maryland limited liability company, executed a promissory note titled "Deferred Purchase Money Promissory Note II"[1] in which it promised to pay $3,296,000, with interest, to Potomac Capital Investment Corporation, an affiliate of Potomac Electric Power Company (PEPCO), in order to purchase approximately 258 acres of land in Montgomery County. In addition to the repayment of principal and its attendant interest upon maturity or sale of all or any portion of the property, the promise to pay also included a provision for payment of "Additional Contingent Interest," "[i]n order to compensate the Holder for accepting an interest rate equal to the Libor Rate, and further to compensate the Holder for granting the Borrower the exculpation from liability provided in [the Note]." Additional Contingent Interest was defined as "35% of the difference between Gross Revenue and Approved Costs, calculated at a time or times specified in this Note," while Gross Revenue was defined as "the greater of the sales price or gross sales proceeds payable in connection with the sale of all or any portion of the Property securing this Note." A Deed of Trust and Security Agreement also were executed on the same day, as well as a Guaranty Agreement executed by Miller and Smith Holding, Inc., a Virginia corporation.[2] In 2001, Potomac transferred its rights under the Note and the Guaranty to Casey PMN, LLC which then became the Holder under the Note and the Guaranty and the Beneficiary under the Deed of Trust.

---

1. This promissory note was the second of two promissory notes executed in connection with the purchase. The first promissory note was paid in full and is not at issue in this case.

2. The record does not include information explaining the relationship between Miller and Smith at Quercus, LLC and Miller and Smith Holding, Inc.

In 2002, under threat of imminent condemnation of the property, Miller and Smith entered into an Agreement with Montgomery County for the sale of the property, for the purpose of open space conservation. Under the Agreement, the property was divided into six parcels, and the County was to make five cash payments between November 2002 and July 2006 totaling $9,025,500 to Miller and Smith upon the conveyance of the six separate parcels of land, as follows: Parcel 1 (85.79 acres) for $3,000,000 on November 15, 2002; Parcel 2 (63.52 acres) for $2,221,500 on July 1, 2003; Parcel 3 (50.16 acres) for $1,754,000 on July 1, 2004; Parcels 4A and 4B (27.91 and 16.41 acres, respectively) for $1,550,000 on July 1, 2005; and Parcel 5 (14.3 acres) for $500,000 on July 1, 2006. Montgomery County also agreed to provide a letter to the Internal Revenue Service "acknowledging that [Miller and Smith] was paid the above amounts for the Property and acknowledging that [Miller and Smith] claims that the fair market value of the Property is not less than $17,100,000." The County took no position on the actual fair market value of the property, but included $17,100,000 in the Agreement to enable Miller and Smith to attempt to take advantage of any possible tax benefits. According to the parties, the entire $9,025,500 has been paid to Miller and Smith and, in turn, Miller and Smith has transferred all parcels of the property to the County.

Miller and Smith paid Casey Additional Contingent Interest under the promissory note, based on the $9,025,500 paid by Montgomery County, but Casey did not agree with the computation and claimed that the calculation should have included not only the $9 million, but additional tax benefits.

Casey, thereafter, filed a four count complaint in the Circuit Court for Montgomery County against Miller and Smith and Miller and Smith Holding, Inc., alleging that Miller and Smith had "not properly calculated and paid Additional Contingent Interest to Casey based on the fair market value of the Property, as contemplated by the Note and Deed of Trust . . . .," prefacing the following four Counts with the factual recitations noted above:

## COUNT I (BREACH OF NOTE AND DEED OF TRUST—DAMAGES)

18. Casey incorporates the preceding paragraphs of its Complaint by reference as if set forth herein.

19. Miller and Smith's failure to pay Casey the full amount of Additional Contingent Interest due under the Note, calculated as 35% of the fair market value of the Property, as contemplated by the terms of the Note, constitutes a breach of the Note and the Deed of Trust.

20. As a result of Miller and Smith's breach of the Note and the Deed of Trust, Casey has suffered substantial financial harm.

21. Under the terms of the Note, in addition to the Additional Contingent Interest due but unpaid, Miller and Smith is liable to Casey for all reasonable costs of collection of amounts due under the Note, including reasonable attorneys' fees.

## COUNT II (ALTERNATIVE: BREACH OF NOTE AND DEED OF TRUST—DAMAGES)

22. Casey incorporates the preceding paragraphs of its Complaint by reference as if set forth herein.

23. Miller and Smith's failure to pay Casey the full amount of Additional Contingent Interest due under the Note, calculated as 35% of all compensation received by its members, including by their use of the charitable deductions derived from the sale of the Property to the County at below fair market value, constitutes a breach of the Note and the Deed of Trust.

## COUNT III (BREACH OF THE NOTE AND DEED OF TRUST SPECIFIC PERFORMANCE—INJUNCTIVE RELIEF)

24. Casey incorporates the preceding paragraphs of its Complaint by reference as if set forth herein.

25. Miller and Smith's refusal to permit Casey to inspect its books and records for the purpose of, *inter alia,* assessing whether Miller and Smith has accurately calculated the Approved Costs that it is permitted to deduct from "Gross Revenue" in determining the amount of Additional Contingent Interest due under the Note constitutes a breach of the terms of the Note and the Deed of Trust.

26. Without inspecting and examining the books and records maintained by Miller & Smith, Casey has not been able to determine whether Miller and Smith has deducted more as "Approved Costs" from "Gross Revenue" in making payments of Additional Contingent Interest to Casey under the Note than is proper.

### COUNT IV (BREACH OF THE GUARANTY)

27. Casey incorporates the preceding paragraphs of its Complaint by reference as if set forth herein.

28. Under the Guaranty, M & S Holding is jointly and severally liable with Miller & Smith to Casey for injury it suffers as a result of Miller and Smith's failure to make proper payment of Additional Contingent Interest and Miller and Smith's failure to meet other obligations under the terms of the Note and the Deed of Trust.

29. As a result of Miller and Smith's breach of the Note and the Deed of Trust, Casey has suffered substantial injury for which M & S is liable to Casey.

WHEREFORE, Plaintiff, Casey PMN, LLC, respectfully demands that the Court enter judgment in its favor against Defendants Miller and Smith at Quercus, LLC and M & S Holding, Inc., jointly and severally, (a) awarding Casey PMN, LLC, compensatory damages in an amount to be proven at trial for unpaid Additional Contingent Interest, together with court costs and pre-and post-judgment interest, and costs of collection, including reasonable attorneys' fees, costs and expenses; (b) ordering Defendant Miller and Smith at Quercus to permit Casey PMN, LLC to inspect, examine and copy its books and records; and (c) granting

such other and further relief as the Court deems just and proper.

Miller and Smith filed a Motion to Dismiss Count II, as well as an Answer to the remaining three counts of the Complaint, generally denying liability pursuant to Rule 2–323(d),[3] after which Casey filed an Opposition to the Motion to Dismiss. Miller and Smith filed a Counterclaim for Declaratory Judgment alleging entitlement to damages based on Casey's wrongful claim that Miller and Smith and its holding company were obligated to pay Additional Contingent Interest based on $17,100,000 rather than the purchase price of $9,025,500; Casey filed an Answer to the Counterclaim generally denying liability.

The Circuit Court thereupon held a hearing on the Motion to Dismiss and in a written "Opinion and Order," found that the terms of the contract were "clear and unambiguous," and charitable tax deductions from the sale of land did not constitute "Additional Contingent Interest," thereby granting Miller and Smith's Motion to Dismiss Count II of the Complaint, and the docket entry reflected the fact that the case was not closed based on the partial judgment.[4] The parties, on August 22, 2007, then filed a joint "Stipulation of Dismissal" pursuant to Rule 2–506,[5] dismissing "with prejudice" Counts I and III of

---

3. Rule 2–323(d) provides:

(d) **General denials in specified causes.** When the action in any count is for breach of contract, debt, or tort and the claim for relief is for money only, a party may answer that count by a general denial of liability.

4. The docket entry regarding the grant of the Motion to Dismiss Count II states:

ORDER, DISMISS (PARTIAL—CASE NOT CLOSE[D]) ... OPINION AND ORDER OF COURT ... THAT DEFENDANTS' MOTION TO DISMISS COUNT II ... SHALL BE, AND HEREBY IS GRANTED, ENTERED.

5. Rule 2–506 regarding voluntary dismissals provides:

(a) **By notice of dismissal or stipulation.** Except as otherwise provided in these rules or by statute, a party who has filed a complaint, counterclaim, cross-claim, or third-party claim may dismiss all or part of the claim without leave of court by filing (1) a notice of

the Complaint and also purportedly dismissing Count IV and the Counterclaim "with prejudice," but with an important caveat:

(a) Plaintiff is hereby dismissing Counts I and III of its Complaint with prejudice (Count II having previously been dismissed by interlocutory Opinion and Order granting Defendants' Motion to Dismiss Count II);

(b) Plaintiff is hereby dismissing Count IV of its Complaint, with prejudice, except that, since Count IV includes a claim that Defendant Miller & Smith Holding, Inc., is a guarantor with respect to the liability of Defendant Miller & Smith at Quercus, LLC, as alleged in Count II, such dismissal shall be without prejudice to the extent that the Court's earlier interlocutory Opinion and Order dismissing Count II, is vacated or reversed on appeal and remanded to this Court; and

(c) Defendant is hereby dismissing its Counterclaim with prejudice, except that such dismissal shall be without prejudice to the extent that the Court's earlier, interlocutory Opinion and Order dismissing Count II, is vacated or reversed on appeal and remanded to this Court.

---

dismissal at any time before the adverse party files an answer or (2) by filing a stipulation of dismissal signed by all parties to the claim being dismissed.

(b) **By order of court.** Except as provided in section (a) of this Rule, a party who has filed a complaint, counterclaim, cross-claim, or third-party claim may dismiss the claim only by order of court and upon such terms and conditions as the court deems proper. If a counterclaim has been filed before the filing of a plaintiff's motion for voluntary dismissal, the action shall not be dismissed over the objection of the party who filed the counterclaim unless the counterclaim can remain pending for independent adjudication by the court.

(c) **Effect.** Unless otherwise specified in the notice of dismissal, stipulation, or order of court, a dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a party who has previously dismissed in any court of any state or in any court of the United States an action based on or including the same claim.

(d) **Costs.** Unless otherwise provided by stipulation or order of court, the dismissing party is responsible for all costs of the action or the part dismissed.

Casey subsequently filed a Notice of Appeal stating that it "notices its appeal of the Court's Opinion and Order dismissing Count II of Plaintiff's Complaint in the above-captioned action, which Order became a final judgment upon the filing of a Stipulation of Dismissal, dismissing all then-pending claims and counterclaims in this matter on August 22, 2007."

The Court of Special Appeals reached the merits of the controversy and reversed the Circuit Court, but, in a footnote, recognized the problem with the conditional language of the dismissal of Count IV and the Counterclaim:

> The Stipulation was subject to the exception that the dismissal of the counterclaim and appellant's fourth count (against Miller & Smith Holding as guarantor of the Note) would be without prejudice if the Opinion and Order dismissing Count II were vacated or reversed on appeal and remanded.

> Ordinarily, "[t]here can be no final judgment until every claim is resolved, [but] dismissal is one of the means by which claims may be resolved for the purposes of the pending litigation." *Tierco Maryland, Inc. v. Williams*, 381 Md. 378, 393, 849 A.2d 504 (2004). Maryland Rule 2–506(a)(2) provides that parties may "dismiss all or part of [a] claim without leave of court ... by filing a stipulation of dismissal signed by all parties to the claim being dismissed." In this case, although the circuit court's grant of appellee's Motion to Dismiss Count II was not a final judgment, the parties' voluntary dismissal of the remaining claims, with prejudice, imparted finality to the court's Opinion and Order. We elaborate.

> In *Collins v. Li*, 158 Md.App. 252, 857 A.2d 135 (2004), we determined that Maryland adheres to the majority rule " 'that a plaintiff cannot appeal from the dismissal of some claims when the balance of his or her claims have been voluntarily dismissed *without prejudice*.' " *Id.* at 267, 857 A.2d 135 (quoting and adopting *Smith v. Lincoln Meadows Homeowners Ass'n, Inc.*, 267 Neb. 849, 678 N.W.2d 726, 731 (2004)) (emphasis added.) *See also Cheng v. Comm'r of*

*IRS,* 878 F.2d 306, 308–11 (9th Cir.1989) (also followed in *Collins* ).

We do not perceive the parties' Stipulation of Dismissal to flout the final judgment rule, despite its caveat that appellee's counterclaim and "Count IV" of appellant's complaint were dismissed without prejudice to the extent that we vacate or reverse. On review of the record, appellee's counterclaim for declaratory judgment is limited to the same question presented by appellant's Count II, which was the subject of the circuit court's Opinion and Order: whether the term "gross sales proceeds payable" in the Note encompasses the financial gain realized from the charitable tax deductions at issue. Moreover, "Count IV" does not allege a separate substantive cause of action; it merely provides the basis for the joint and several liability of both appellees. The remaining substantive counts of appellant's complaint, Counts I and III, were dismissed "with prejudice." Thus, the parties have effectively reserved only the right to continue to litigate on the substantive grounds encompassed by Count II of appellant's complaint. The parties' stipulation, which has enabled this appeal to proceed, means that they may no longer litigate any other issues implicated by appellant's complaint.

Miller and Smith petitioned this Court for a writ of certiorari, which we granted, 408 Md. 148, 968 A.2d 1064 (2009), to address the following questions, which we have reordered:

I. May a party, through a voluntary dismissal *without* prejudice, cause a non-final judgment to become final?

II. Does the term "sales proceeds payable" as used in a private contract incorporating Md.Code. Ann., Comm. Law, § 9–102(A)(65) include tax deductions for which the seller might be eligible?

III. May an appellate court construe an ambiguous contract as a matter of law without giving the parties an

opportunity to present extrinsic evidence? [6]

(Italics in original).

## Discussion

 Our jurisprudence is replete with references to the fact that parties cannot agree to the exercise of our appellate jurisdiction, even when the Court of Special Appeals has exercised its review, because our jurisdiction is governed only by the Constitution, statutes, and the Rules. *See East v. Gilchrist,* 293 Md. 453, 458, 445 A.2d 343, 345 (1982); *Lewis v. Lewis,* 290 Md. 175, 179, 428 A.2d 454, 456 (1981); *Clark v. Elza,* 286 Md. 208, 211–12, 406 A.2d 922, 924 (1979), quoting *Biro v. Schombert,* 285 Md. 290, 293, 402 A.2d 71, 73 (1979). Judge John C. Eldridge, writing for the Court in *Biro,* observed that parties cannot confer jurisdiction on our Court, and we must dismiss a case *sua sponte* on a finding that we do not have jurisdiction:

> The apparent acquiescence of the parties to the exercise of appellate jurisdiction by the Court of Special Appeals does not enable us to overlook the matter. As we stated in *Eastgate Associates v. Apper,* 276 Md. 698, 700–701, 350 A.2d 661 (1976): "The jurisdiction of this Court, and the Court of Special Appeals, is determined by constitutional provisions, statutory provisions and rules; jurisdiction cannot be conferred by consent of the parties." Consequently, "this Court will dismiss an appeal *sua sponte* when it notices that appellate jurisdiction is lacking." *Smith v. Taylor,* 285 Md. 143, 400 A.2d 1130 (1979). *See* Rule 835 a 1. Similarly, where the Court of Special Appeals has entertained an appeal without having jurisdiction to do so, and the case is timely brought to our attention (such as by a petition for a writ of certiorari dealing with the merits of the appeal), we will issue a writ of certiorari and *sua sponte* consider the jurisdiction of the intermediate appellate court. *Eastgate*

---

6. We will not address questions II and III, thereby declining to address whether the Court of Special Appeals' reversal of the grant of the Motion to Dismiss should be reversed, because of our disposition of the first question.

*Associates v. Apper, supra. See also Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976) ("Though neither party has questioned the jurisdiction of the Court of Appeals to entertain the appeal, we are obligated to do so on our own motion if a question thereto exists.").

*Id.* at 293, 402 A.2d at 73. In this regard, we may generally exercise jurisdiction over a case on appeal if there exists a final judgment, which disposes of all claims against all parties and concludes the case. *See Nnoli v. Nnoli,* 389 Md. 315, 323, 884 A.2d 1215, 1219 (2005) ("The general rule as to appeals is that, subject to a few, limited exceptions, a party may appeal only from a final judgment.").[7] We have often stated that appeals may be taken to the Court of Special Appeals under Section 12–301 of the Courts and Judicial Proceedings Article (1974, 2006 Repl.Vol.),[8] with exceptions not relevant here, only from a final judgment entered in a civil or criminal case by a circuit court. *See Addison v. Lochearn,* 411 Md. 251, 261, 983 A.2d 138, 144 (2009); *Gruber v. Gruber,* 369 Md. 540, 546, 801 A.2d 1013, 1016 (2002).

A "final judgment" is defined in Section 12–101(f) of the Courts and Judicial Proceedings Article as "a judgment, decree, sentence, order, determination, decision, or other action by a court ... from which an appeal ... may be taken." *See Anthony v. Clark,* 335 Md. 579, 587, 644 A.2d 1070, 1074 (1994). "The final judgment rule derives originally from the

---

7. The exceptions to the final judgment rule, not relevant here, and more fully discussed in *Addison v. Lochearn,* 411 Md. 251, 273–74, 983 A.2d 138, 151–52 (2009), include appeals from interlocutory orders specifically allowed by statute, immediate appeals permitted under Rule 2–602, and appeals from interlocutory rulings allowed under the common law collateral order doctrine.

8. Section 12–301 of the Courts and Judicial Proceedings Article provides in pertinent part:

Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court.

All statutory references are to the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), unless otherwise stated.

English common law principle that a writ of error ordinarily would not lie until there had been a final disposition of an entire controversy." *Brewster v. Woodhaven Bldg. & Dev.,* 360 Md. 602, 609–10, 759 A.2d 738, 742 (2000) (citations and footnote omitted) ("The core of the final judgment rule is thus that a trial court's decision disposing of the merits of the parties' claims may be appealed.").

 Our "bedrock" principles of jurisdiction indicate that, ordinarily, appellate jurisdiction is dependent upon "the entry of a final judgment, disposing of all claims against all parties," with limited exceptions. *See Kennedy v. Lasting Paints, Inc.,* 404 Md. 427, 449, 947 A.2d 503, 516 (2008), citing *Smith v. Lead Indus. Assoc., Inc.,* 386 Md. 12, 21, 871 A.2d 545, 550 (2005), quoting *Shoemaker v. Smith,* 353 Md. 143, 165, 725 A.2d 549, 560 (1999); *see also Silbersack v. AC and S, Inc.,* 402 Md. 673, 678, 938 A.2d 855, 857–58 (2008); Rule 2–602(a).[9] In *Silbersack,* we discussed our "bedrock" principles of appellate jurisdiction:

> To set the context, there is a long-standing bedrock rule of appellate jurisdiction, practice, and procedure that, unless otherwise provided by law, the right to seek appellate review in this Court or the Court of Special Appeals ordinarily must await the entry of a final judgment that disposes of all claims against all parties.

*Id.* at 678, 938 A.2d at 858 (citations omitted). To qualify as a final judgment, an order "must either decide and conclude the

---

9. Rule 2–602(a) entitled "Judgments not disposing of entire action" provides:

(a) **Generally.** Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

rights of the parties involved or deny a party the means to prosecute or defend rights and interests in the subject matter of the proceeding," *Nnoli*, 389 Md. at 324, 884 A.2d at 1219–20, and must, ordinarily, satisfy three criteria:

(1) [I]t must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2–602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2–601.

*Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767, 773 (1989). In considering whether a particular court order or ruling constitutes a final, appealable judgment, we have looked to whether the order was "unqualified," and whether there was "any contemplation that a further order [was to] be issued or that anything more [was to] be done." *Rohrbeck*, 318 Md. at 41–42, 566 A.2d at 774 (citations omitted) (alterations in original).

It is clear that when there is a disposition of all claims against all parties, there is a final judgment. We have held that an unqualified order granting a motion to dismiss or to strike a plaintiff's entire initial pleading, without granting leave to amend, absent counterclaims, cross-claims, or third-party claims, puts the plaintiffs out of court, and terminates the particular action in the trial court, is final and appealable. *See Houghton v. County Comm'rs of Kent County*, 305 Md. 407, 412, 504 A.2d 1145, 1148 (1986), *aff'd upon reconsideration*, 307 Md. 216, 221, 513 A.2d 291, 293–94 (1986) (citations omitted). *See also Moore v. Pomory*, 329 Md. 428, 432, 620 A.2d 323, 325 (1993) (holding that a court's dismissal of a plaintiff's entire complaint without prejudice was a final and appealable judgment). In *Houghton*, Edward and Elizabeth Houghton filed a three count complaint in the Circuit Court for Kent County against the County Commissioners, alleging questionable conduct regarding voting in connection with a particular public project. The Commissioners filed a Motion to Dismiss the complaint, which the Circuit Court granted with regard to Counts I and III for failure to state a claim

upon which relief could be granted, but denied Count II.[10] Two days later, the plaintiffs filed a notice voluntarily dismissing Count II of their complaint with prejudice, which was entered on the docket the same day; we held that as of the day Count II was dismissed with prejudice, there was a final disposition.

The rub comes, however, because of the complexity of our modern practice of pleading. We already have noted that our long held belief that a judgment which "decides or settles the 'very matter in controversy between the parties' and determines 'the question of right in issue in the cause' " is a final judgment, and "works well enough in a simple lawsuit in which a single plaintiff sues a single defendant on a single claim," does not function easily in our modern system of pleading, in which liberal joinder of parties, cross-claims, and counter-claims may be disposed of at various stages of litigation. *Planning Bd. of Howard County v. Mortimer*, 310 Md. 639, 644–45, 530 A.2d 1237, 1240 (1987), quoting *Nally v. Long*, 56 Md. 567, 571 (1881).

Although we have held that an order or other form of decision that adjudicates less than the entire claim, or adjudicates the rights and liabilities of fewer than all parties to the action, is not a final judgment, utilization of Rule 2–602(b),[11] regarding certification by a trial court of a final judgment, has occupied much of our efforts in recent years. The Rule allows a party to appeal from a judgment not disposing of an entire action, and one that is not otherwise a final judgment, if a court expressly determines in a written order that there is no

---

10. The Circuit Court's order stated that "the Motion to Dismiss Counts I and III of the Complaint as Amended is GRANTED this 21st day of January, 1985. The Motion is Denied as to Count II." *Houghton v. County Comm'rs of Kent County*, 305 Md. 407, 410, 504 A.2d 1145, 1147 (1986).

11. Rule 2–602(b) provides:

(b) **When allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties; or

(2) pursuant to Rule 2–501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

just reason for delay and directs the entry of a final judgment as to one or more but fewer than all of the claims or parties. We have noted, however, that while Rule 2–602(b) affords a judge limited discretion to enter final judgment when fewer than all parties or claims have been adjudicated, it does not create some kind of "mystic 'never-never land'" where a defendant can be both in and not in a case. *Silbersack*, 402 Md. at 687, 938 A.2d at 863.

In *Smith*, 386 Md. at 12, 871 A.2d at 545, we emphasized that Rule 2–602(b) is reserved for the "infrequent harsh case," and we will not hesitate to countermand the entry of judgment under the Rule and dismiss an appeal upon a finding that the trial court did not articulate a sufficient reason why there was no just reason for delay of an appeal. *Id.* at 24–25, 871 A.2d at 552, quoting *Diener Enters. v. Miller*, 266 Md. 551, 555–56, 295 A.2d 470, 473 (1972). *Smith* was a complex case involving seven minor plaintiffs from four families (the Smiths, the Brantleys, the Hamiltons, and the Shorters) who jointly filed a fifteen-count complaint against twenty-one defendant companies for various products liability-related claims in the Circuit Court for Baltimore City. Early in the Circuit Court proceedings, the judge denied the plaintiff families' motion to sever the action into four separate cases, one for each family, which would have allowed them to dismiss the action without prejudice and bring separate actions. Instead, the Circuit Court set four separate trial dates, but maintained the action as one unit. A "blizzard" of motions to dismiss and for summary judgment followed, which were granted, in whole or in part, as to various counts and defendants. On appeal, the Court of Special Appeals recognized there was no final judgment in the case because many of the counts against many of the defendants were still unresolved, but that all claims against all defendants had been finally resolved with respect to the Smith family, and concluded, as a result, that "to condition the Smith appeal upon the entry of final judgment in the claims brought by the other plaintiffs would be inefficient, at best, and possibly foolish," *Smith*, 386 Md. at 20, 871 A.2d at 549, and purported to enter final judgment on the Smith claims.

We granted certiorari, but ultimately dismissed the appeal because there was no final, appealable judgment. We held that no final judgment could be certified, because all claims by the Smith family against all of the defendants had not been resolved. There had been an automatic stay that accompanied the filing for bankruptcy protection by Lead Industries Association, Inc., a trade organization defendant; without severing LIA as a defendant, the Circuit Court could not have entered a final judgment under Rule 2–602(b), because "that would have amounted to splitting a single claim, which is not allowed." *Id.* at 23, 871 A.2d at 551. We held, as a result, that the Court of Special Appeals abused its discretion by entering final judgment under Rule 8–602(e) [12] and that discretion to allow an appeal by entering a final judgment as to less than all of the claims or parties "was to be reserved for the 'very infrequent case.'" *Id.* at 24, 871 A.2d at 552, quoting *Diener*, 266 Md. at 555–56, 295 A.2d at 473.

In *Mortimer*, 310 Md. at 639, 530 A.2d at 1237, we dismissed two consolidated appeals for lack of jurisdiction, because the trial court, in one appeal, had failed to certify an order under Rule 2–602, and in the other appeal, certified a non-certifiable order. In the first appeal, the dismissal of a defendant was arguably final in the traditional sense because it was an unqualified order granting a motion to dismiss, which put the parties out of court and dealt with a single claim, but was not, in fact, final because there were multiple parties involved and a second defendant remained. We held that absent certification pursuant to Rule 2–602(b), there was no final judgment because the order adjudicated the rights and liabilities of fewer than all the parties to the action. *Id.* at 651–53, 530 A.2d at 1243–44. In the second appeal, we

---

12. Rule 8–602(e)(1)(C) provides in pertinent part:

If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may, as it finds appropriate, ... enter a final judgment on its own initiative....

addressed the denial of a motion to dismiss a party and held that it was not a final judgment because it was not an order that settled the matter in controversy or completely adjudicated the rights and liabilities of the parties. Because it maintained the status quo and did not display the characteristics of finality, it was not certifiable under Rule 2–602(b). *Id.* at 653–55, 530 A.2d at 1244–45.

Recently, in *Addison v. Lochearn,* 411 Md. 251, 983 A.2d 138 (2009), we had occasion to discuss the limited application of Rule 2–602(b) and discussed the limited ability of a court to certify a final judgment when claims are related and only one claim had been dismissed:

> In fact, in the present case, the trial judge may not have been able to certify the denial of the motion to compel arbitration as a final judgment, because the counterclaim involved the same set of facts as the complaint and thereby constituted a single claim within the meaning of Rule 2–602(a) (previously Rule 605). *See County Comm'rs for St. Mary's County v. Lacer,* 393 Md. 415, 426, 903 A.2d 378, 384 (2006) ("[T]he trial court would not be authorized to finalize an order unless, by its nature, that order was final as to a single claim or party."), quoting *Medical Mutual v. Evander,* 331 Md. 301, 308–09, 628 A.2d 170, 173–74 (1993) ("This Court has repeatedly held that an order which disposes of only a part of a single claim cannot be made final under Rule 2–602 or its predecessor rule") (internal citations and quotations omitted); *see also East v. Gilchrist,* 293 Md. 453, 459–60, 445 A.2d 343, 346 (1982) (holding that only a single claim for relief was presented when the counterclaim involved the same facts as the plaintiff's claim, because "[d]ifferent legal theories for the same recovery, based on the same facts or transaction, do not create separate 'claims' for purposes of [Rule 605]"); *Biro v. Schombert,* 285 Md. 290, 295, 402 A.2d 71, 74 (1979) (alternate legal theories "based upon one matter or transaction" do not give rise to separate claims); *Diener Enterprises, Inc. v. Miller,* 266 Md. 551, 556, 295 A.2d 470, 473 (1972) ("[T]he 'claims' stated by using two counts is actually but one claim that was framed in two

ways so as to present either one of two legal theories for one recovery.").

*Id.* at 273 n. 14, 983 A.2d at 151 n. 14. In the case sub judice, the Circuit Court's dismissal of Count II of the Complaint did not constitute a final, appealable judgment, because Counts I, III, and IV of the Complaint, and the Counterclaim remained. We know from *Smith* and Addison, supra, that the trial court could not have certified its partial dismissal as a final judgment, because the remaining counts and the counterclaim involved the same set of facts, within the meaning of Rule 2–602(a).

The parties, nevertheless, then attempted to circumvent the final judgment rule and attempted to utilize Rules 2–506 [13] and

---

13. Rule 2–506 provides in pertinent part:

(a) **By notice of dismissal or stipulation.** Except as otherwise provided in these rules or by statute, a party who has filed a complaint, counterclaim, cross-claim, or third-party claim may dismiss all or part of the claim without leave of court by filing (1) a notice of dismissal at any time before the adverse party files an answer or (2) by filing a stipulation of dismissal signed by all parties to the claim being dismissed.

(b) **By order of court.** Except as provided in section (a) of this Rule, a party who has filed a complaint, counterclaim, cross-claim, or third-party claim may dismiss the claim only by order of court and upon such terms and conditions as the court deems proper. If a counterclaim has been filed before the filing of a plaintiff's motion for voluntary dismissal, the action shall not be dismissed over the objection of the party who filed the counterclaim unless the counterclaim can remain pending for independent adjudication by the court.

(c) **Effect.** Unless otherwise specified in the notice of dismissal, stipulation, or order of court, a dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a party who has previously dismissed in any court of any state or in any court of the United States an action based on or including the same claim.

The practice and procedure with respect to voluntary dismissal in equity as it existed prior to the adoption of Rule 2–506, was expressed in *Camden Sewer Co. v. Mayor and Council of Salisbury,* 157 Md. 175, 184, 145 A. 497, 500 (1929):

It appears, therefore, to be well settled that when equity proceedings have progressed to such a point as to entitle the defendant to affirmative relief, or where, as stated by Chancellor Bland, [*Hall v. McPherson* ], he becomes virtually clothed with the rights of an actor, the right of the complainant to dismiss as a matter of course ceases. We are of the opinion that ordinarily and as a general rule the

2–601 [14] to file a Stipulation of Dismissal, which dismissed Counts I and III of the Complaint "with prejudice," and attempted to also dismiss Count IV and the Counterclaim "with prejudice," with the caveat that the dismissal of these claims were "without prejudice to the extent that the Court's earlier interlocutory Opinion and Order dismissing Count II, is vacated or reversed on appeal and remanded to this Court."

---

complainant is master of his own litigation and has the right to dismiss his proceedings at any time up to a final determination of the case, by following the approved practice of making application to the court for leave so to do; but that when at any point of the proceedings the defendants become entitled to affirmative relief which it is proper for them to enforce in the proceedings then pending, the complainant no longer, as of course, has the right to dismiss...."
Rule 2–506 is a codification of this long standing practice. *See Byron Lasky & Assoc. v. Cameron–Brown*, 33 Md.App. 231, 235, 364 A.2d 109, 112 (1976) (interpreting former Rule 582, which was incorporated into Rule 2–506).

**14.** Rule 2–601 requires a judgment to be memorialized in writing, but neither the word "judgment" nor the judge's signature are required for relief. *Tierco Maryland, Inc. v. Williams*, 381 Md. 378, 393–94, 849 A.2d 504, 513–14 (2004).
Rule 2–601 regarding entry of judgment provides:
(a) **Prompt entry—Separate document.** Each judgment shall be set forth on a separate document. Upon a verdict of a jury or a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith prepare, sign, and enter the judgment, unless the court orders otherwise. Upon a verdict of a jury or a decision by the court granting other relief, the court shall promptly review the form of the judgment presented and, if approved, sign it, and the clerk shall forthwith enter the judgment as approved and signed. A judgment is effective only when so set forth and when entered as provided in section (b) of this Rule. Unless the court orders otherwise, entry of the judgment shall not be delayed pending determination of the amount of costs.
(b) **Method of entry—Date of judgment.** The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.
(c) **Recording and indexing.** Promptly after entry, the clerk shall (1) record and index the judgment, except a judgment denying all relief without costs, in the judgment records of the court and (2) note on the docket the date the clerk sent copies of the judgment in accordance with Rule 1–324.

■ Casey argues before us that the stipulated dismissal of Count IV and the Counterclaim following the Circuit Court's dismissal of Count II, really constitutes a dismissal with prejudice of all claims and constitutes a final judgment. Casey contends "there can be no concern whatsoever about piecemeal litigation, inconsistent rulings, advisory opinions or judicial economy," because, Casey argues, Count IV cannot be revived unless the dismissal of Count II is vacated and the case remanded to the Circuit Court. Rather than circumventing or flouting the final judgment rule, Casey contends the stipulation avoided the "wasteful process" of proceeding to discovery and trial on Counts I and III solely to "preserve its claim against the guarantor" in Count IV. Conversely, Miller and Smith before us argues there was no final judgment in the Circuit Court because the stipulation of dismissal was "without prejudice," as to Count IV and the Counterclaim, even though it contends we should reach the merits of this case.

To paraphrase writer Gertrude Stein, "without prejudice is without prejudice is without prejudice."[15] Despite Casey's vehemence that the parties' Stipulation of Dismissal was "with prejudice" and created a final judgment, we disagree. The "without prejudice" exception of the Stipulation, no matter how narrow, still created an exception that attempted to confer appellate jurisdiction—an action that could not have been the subject of a certification order. The parties could not agree to confer appellate jurisdiction after the dismissal of Count II of the complaint when they created a dismissal without prejudice of Count IV and the Counterclaim, and when both were inexorably intertwined with Count II.

In so holding, our disagreement is with the Court of Special Appeals and with its emphasis on the parties' intent to determine whether a final judgment existed. In reaching the merits, the Court of Special Appeals stated that it did "not perceive the parties' Stipulation of Dismissal to flout the final

---

**15.** See Alston v. Alston, 331 Md. 496, 515, 629 A.2d 70, 80 (1993), quoting Gertrude Stein, Sacred Emily (1913) (A "[r]ose is a rose is a rose is a rose").

judgment rule, despite its caveat that appellee's counterclaim and 'Count IV' of appellant's complaint were dismissed without prejudice to the extent that we vacate or reverse," claiming that the admonition against circumventing the final judgment rule would require an intent analysis, relying on *Collins v. Li*, 158 Md.App. 252, 273–74, 857 A.2d 135, 148 (2004).

In *Collins*, 158 Md.App. at 252, 857 A.2d at 135, the case arose out of several claims and counterclaims between three plaintiffs and twelve defendants. The original plaintiffs included two sets of parents, individually and as Personal Representatives, to their respective two children who died in a residential fire at a home rented by Michael Chapman and Carolyn Hill ("the Chapman–Hills"). There were ten defendants in the original complaint, one of which included Dr. Gui–Fu Li and Chung Ling Li ("the Lis"), as owners of the home. A later complaint was filed by the Chapman–Hills, individually and as Legal Guardians of their three children, one of whom was severely injured in the fire, against the original defendants and two others. Amidst a flurry of motions and counterclaims, the court consented to the dismissal, without prejudice, of all claims between the Chapman–Hills and Lis, and also granted several motions to dismiss, or in the alternative, for summary judgment, in favor of two defendants, The Ryland Group, Inc., and Summit Electric Company. The court, thereafter, denied the Chapman–Hill's motion to certify the orders of dismissal as a final judgment under Rule 2–602(b)(1), and the Chapman–Hill's appealed. Ryland cross-appealed raising the question of whether the Circuit Court erred in consenting to the dismissal without prejudice in order to obtain a final judgment.

On appeal, the Court of Special Appeals noted the plaintiffs' clear intent to revive their previously dismissed claims against the voluntarily dismissed defendants after the ruling on appeal, and stated that "[t]he final judgment rule cannot be circumvented by voluntary dismissal pursuant to Rule 2–506." *Collins*, 158 Md.App. at 273–74, 857 A.2d at 148. The Court reasoned that the "voluntary dismissal exception" would quickly subsume the rule, if it were to provide a mechanism for

securing appellate review of any trial court order, and the appellate courts "would be left without any meaningful way to regulate interlocutory appeals." *Id.* at 273, 857 A.2d at 147 (citations and quotations omitted). The Court concluded that the plaintiffs' actions in dismissing the remaining defendants without prejudice gave them the option to resurrect their dismissed claims and was held to be an impermissible attempt to circumvent the final judgment rule.

Circumvent has several definitions including, "to go around: make a full circuit around or bypass without going through" and "to overcome or avoid the intent, effect, or force of: anticipate and escape, check, or defeat by ingenuity or stratagem." Webster's Third Int'l Dictionary Unabridged 410 (2002). The Court of Special Appeals in the present case misconstrued the use of the word "circumvent" in *Collins* to permit a without prejudice stipulation to constitute a final judgment because the parties did not intend to flout the final judgment rule, thereby inferring that the word circumvent requires bad intent.

■ A party or a court cannot intentionally or unintentionally determine that a conditional stipulation or order, respectively, is a final judgment for purposes of conferring appellate jurisdiction. By engaging in an intent analysis, the Court of Special Appeals attempted to give more power to the parties to determine finality than we have given to the judiciary, a result which would be anomalous.[16] As Judge Irma S. Raker

---

16. Casey cites to *Crowder v. Master Financial, Inc.*, 176 Md.App. 631, 933 A.2d 905 (2007), *aff'd in part, rev'd in part on other grounds*, 409 Md. 51, 972 A.2d 864 (2009), in which the Court of Special Appeals distinguished *Collins*, and held that when the parties used voluntary dismissal without prejudice, but made clear at oral argument they had no intention of refiling claims, it became clear that the voluntary dismissal was not illusory or used as a vehicle to obtain an advisory opinion, and was a final, appealable judgment. *Id.* at 644–45, 933 A.2d at 913. *Crowder* does not support an intent analysis, however, because the plaintiff-appellants' voluntary dismissal "without prejudice," was in reality, "with prejudice," for there was no condition upon which the plaintiff-appellants could refile the same claims against the voluntarily dismissed defendants.

stated in *Brewster,* 360 Md. at 623, 759 A.2d at 749, "[T]here exists one principle of appealability to which this Court has continuously adhered, one that is simple and understandable. An order which terminates the proceeding in a particular court is final and appealable." Here, neither the Circuit Court judge's dismissal of Count II, nor the parties' Stipulation of Dismissal of Count IV and the Counterclaim without prejudice, created a final, appealable judgment.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED, AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE APPEAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**