IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| VINCENT BRANSON and LEE MESTRE, | § § | No. 280, 2018 |
| | § | |
| Defendants Below, | § | Court Below—Court of |
| Appellants, | § | Chancery of the State of |
| | § | Delaware |
| v. | § | |
| | § | C.A. No. 11504-VCG |
| DAVID BRANSON, ALBERT | § | |
| BRANSON, and ROBERT | § | |
| BRANSON, | § | |
| | § | |
| Plaintiffs Below, Appellees. | § | |

Submitted: November 16, 2018
Decided:   January 14, 2019

Before **VALIHURA, SEITZ,** and **TRAYNOR**, Justices.

# **O R D E R**

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The *pro se* appellants, Vincent Branson and Lee Mestre, challenge a decision of the Court of Chancery quieting title to certain real property that includes a cottage, which is located in South Bethany Beach, Delaware. After careful review of the parties' briefs and the record on appeal, we affirm.

(2)    The appellant Vincent Branson and the appellees (collectively, the "Brothers" and, with their sister, who is not a party to this action, the "Siblings") are

four of the five children of Dorothea Branson, who died in 2001. The appellant Lee Mestre is Vincent's[1] daughter. Ownership of the property at issue has been the subject of several protracted litigations between the parties in Delaware and Maryland. There have been allegations of bad faith and misconduct by both sides. Ultimately, though, the present appeal arises from an *in rem* action brought by the appellees to quiet title to the cottage.[2]

### *Factual Background and the Prior Delaware Litigation*

(3)    The factual background of this matter has been set forth more fully in decisions of the Court of Chancery in the prior litigations.[3] In brief, Dorothea and the Siblings' father divorced in 1969. The Siblings' father acquired the cottage in 1974 and later transferred ownership to the Siblings.[4] A series of transfers among the Siblings and Dorothea later occurred, but no deeds were executed or recorded; as a result of those transfers, by 1990, Dorothea owned 75% of the cottage and Albert owned 25%.[5]

---

[1] For clarity, we use first names to refer to many of the individuals discussed in this case. We intend no disrespect.

[2] The pleadings in this case asserted additional causes of action, but the order from which the appellants appeal was issued *in rem*, determining the rightful owners of the property against any other person, known or unknown, who might claim title to the property.

[3] *E.g.*, *In re Estate of Branson*, 2010 WL 3449235, at *1 (Del. Ch. Sept. 1, 2010).

[4] *Id.*

[5] *Id.*

(4)     Dorothea died in 2001. Her will left all of her estate, in equal shares, to the Siblings.[6] The Brothers' sister disclaimed her interest in the estate, and the estate was divided in equal shares among the four Brothers. Vincent took his share entirely in cash or stock; Albert, David, and Robert each received at least part of his share in the form of an ownership interest in the cottage. In September 2004, Vincent initiated an action in the Court of Chancery alleging that (i) Robert, Albert, and David had agreed to sell him the cottage and seeking specific performance of that agreement or, alternatively, damages for breach of contract, and (ii) he did not receive his full and final share of Dorothea's estate in cash or stock and he therefore inherited an interest in the cottage. After trial, the Court of Chancery found that there was no enforceable oral agreement for the sale of the cottage and that Vincent had received his full share of the estate in cash or stock and had no ownership interest in the cottage.[7] This Court affirmed on appeal.[8]

(5)     The property records continued to suggest that Vincent had an ownership interest in the cottage despite the Court of Chancery's 2010 ruling that he did not. Thus, in 2012, Albert, David, and Robert filed a separate action seeking to quiet title. They did not proceed *in rem*, however. For that reason, the Court of

---

[6] *Id.* at *2.

[7] *Id.* at *1, 7, 10.

[8] *Branson v. Branson*, 2011 WL 6141029 (Del. Dec. 9, 2011).

Chancery held that the title would be quieted only *in personam* with respect to Vincent.[9] On September 19, 2013, the Court of Chancery entered an order incorporating the 2010 ruling that Vincent had no interest in the cottage, granting summary judgment to quiet title against Vincent *in personam*, and ordering cancellation of a *lis pendens* filed by Vincent in January 2012. This Court affirmed on appeal.[10]

*The Maryland Litigation*

(6)    In February 2014, Mestre brought an action against her uncle, David, and her father, Vincent, in the Circuit Court for Montgomery County, Maryland. In that action, Mestre alleged that she was a third-party beneficiary of a 1992 oral agreement between Dorothea and Albert, under which Albert would live in the cottage rent-free for his life and would maintain the cottage as a family vacation home, and the cottage would then pass to Dorothea's grandchildren upon Albert's death. On August 28, 2014, when David had not yet been served, the Maryland Court entered an order approving a partial settlement of the case, which dismissed one of the two counts of the complaint, as to Vincent only. The August 2014 Maryland Order incorporated a settlement agreement that created a Maryland trust, the 10

---

[9] *Branson v. Branson*, 2013 WL 3789755, at *6 (Del. Ch. July 19, 2013).

[10] *Branson v. Branson*, 2014 WL 1512792 (Del. Apr. 15, 2014). Other litigation filed by Vincent in the Delaware courts relating to the cottage is noted elsewhere in this order.

4

North Fourth Street Trust (the "Trust"), which purportedly was funded with Vincent's interest in the cottage. The Order further provided that Vincent would execute a quitclaim deed to Mestre as trustee of the Trust. Vincent executed a quitclaim deed that was dated October 8, 2014 and recorded with the Sussex County Recorder of Deeds on October 24, 2014. That deed from Vincent to Mestre clouded title to the property yet again, despite the Court of Chancery's rulings in 2010 and 2013 that Vincent had no interest in the property.

(7) On December 4, 2014, the Maryland Court entered an order dismissing the action with prejudice with respect to Vincent (but not David). The December 2014 Maryland Order incorporated a settlement agreement that Mestre and Vincent had signed on or about November 13, 2014. That settlement agreement recited various "facts," including that Mestre was a third-party beneficiary of a 1992 agreement between Dorothea and Albert under which "Albert in exchange for rent-free use for life agreed to maintain the family vacation home for as long as he could for the benefit of the family and that at his death the home would pass to the grandchildren of Dorothea." In January 2015, Mestre voluntarily dismissed the action she had filed in 2014, in which David remained as the sole defendant; a few days later, Mestre filed a new, similar action in the same Court, with David as the sole defendant. Like the 2014 action, Mestre's 2015 complaint alleged that Mestre

5

and Dorothea's other grandchildren were third-party beneficiaries of the purported 1992 agreement between Dorothea and Albert.

(8)     The Maryland Court held a three-day bench trial in June 2016. At the close of Mestre's case, David moved for judgment under Maryland Rule of Civil Procedure 2-519. The Court granted that motion, applying Delaware law and holding that Mestre had failed to prove the existence of the alleged 1992 agreement, and entered judgment for David.

### *The Present Action*

(9)     Because of clouds that remained on the title, including the 2014 quitclaim deed from Vincent to Mestre, on September 15, 2015, Albert, David, and Robert initiated this case in the Court of Chancery against Mestre and Vincent. The complaint asserted, among other causes of action, a claim for a declaratory judgment that there was no binding 1992 agreement between Dorothea and Albert and that neither Mestre nor Vincent nor the Trust had any interest in the cottage. In May 2016, the plaintiffs filed an amended complaint asserting an *in rem* quiet title action.

(10)    On or about September 7, 2017, following significant motion practice, the Court of Chancery issued a rule to show cause why the appellees' petition for quiet title should not be granted and set a hearing on the petition for October 13, 2017. The rule to show cause was issued to Mestre and Vincent, who had objected to the petition, and also provided for notice to any unknown defendants by

6

publication and a posting on the property. Following the hearing on October 13, 2017, the Court issued a briefing schedule for all objections. After the scheduled briefing was complete, the Court scheduled a final hearing on the petition to quiet title for March 7, 2018; that hearing was later continued at Mestre's request because of inclement weather.

(11) The Court of Chancery held the final hearing on the petition to quiet title on April 4, 2018. The Court found the ownership of the property to be as follows: Albert Branson, 46.40% tenant-in-common interest; Robert Branson, 31.87% tenant-in-common interest; and David Branson, 21.73% tenant-in-common interest. The Court found that Vincent, Mestre, and the Trust "hold no interest in the subject property as of the date of this Order." The Court ordered that the Sussex County Recorder of Deeds (i) record a copy of the Court's order in the Office of the Recorder of Deeds, "as conclusive evidence of said ownership," and (ii) remove from its records all documents recorded by "Vincent Branson, Lee Mestre, the 10 North Fourth Street Trust, and/or their representatives, creating an encumbrance on the title." Mestre and Vincent appeal from the Court's order.

### Issues Raised on Appeal

*The Characterization of the 2014 Maryland Litigation as a "Sham"*

(12) The appellants contend that the Court of Chancery erred "when it maligned unjustly the personal character and professional reputation of" Mestre and

7

Vincent when it stated that the 2014 Maryland litigation was a "sham." The appellants' arguments with respect to this claim of error largely overlap with their other contentions, such as their arguments that the Court of Chancery failed to give proper effect to the orders issued by the Maryland Court in 2014 and that the appellees failed to establish title. To the extent that this argument is distinct from the appellants' other arguments, it focuses on the alleged harm to the appellants' reputation from the Court of Chancery's choice of words to describe the 2014 Maryland litigation. The appellants did not make that claim to the Court of Chancery, nor have they explained how such reputational harm is a basis for reversing the Court of Chancery's conclusions concerning the ownership of the property. We therefore decline to consider it further.[11]

*Subject Matter Jurisdiction and Personal Jurisdiction*

(13) Next, the appellants contend that the Court of Chancery lacked subject matter jurisdiction and personal jurisdiction over the trust and the trustee "to declare the Trust the product of sham litigation and to effectively eviscerate the Trust by directing that the Orders which created it and the deed which was transferred to it by

---

[11] *See* DEL. SUPR. CT. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."); *Sandt v. Del. Solid Waste Auth.*, 640 A.2d 1030, 1034 (Del. 1994) (deciding an issue that was not fairly presented to the trial court because "the issue is outcome-determinative and may have significant implications for future cases" and decision would promote judicial economy).

Maryland Order be removed from the Delaware Land Records." The appellants' subject matter jurisdiction argument is without merit. The order subject to this Court's review does not decide the validity of the trust or its origins. The order resolves only an *in rem* action concerning the ownership of real property located in Sussex County, Delaware. It is clear that the Court of Chancery has subject matter jurisdiction to decide an *in rem* action concerning property located in Delaware.[12] In the order that is before this Court on appeal, the Court of Chancery exercised that jurisdiction and found that the Trust did not have an ownership interest in the property; it did not, as the appellants assert, rule regarding the validity or viability of the trust.

(14) The appellants seem simultaneously to advance and withdraw their personal jurisdiction argument. To the extent that they intend to press a personal jurisdiction argument, the argument is unavailing. The Court of Chancery's order quieting title in the *in rem* action exercised jurisdiction over the property; it did not impose on Mestre (individually or in her capacity as trustee of the Trust) or on

---

[12] *See Wilkes v. State*, 265 A.2d 421, 424 (Del. 1970) ("[I]f an alleged cloud involves disputes which can be resolved only by extrinsic evidence lying outside the record, or if the invalidity of a recorded instrument must be established by matters outside the record, then equity has jurisdiction to try the cause.").

Vincent any personal liability or obligation.[13] Moreover, both Mestre and Vincent "have consented to jurisdiction to contest the *in rem* claim."[14]

*The Effect of the Maryland Court Orders*

(15) Next, the appellants contend that the Court of Chancery erroneously failed to give full faith and credit to the orders of the Maryland court dated August 26, 2014, and December 3, 2014. It is not entirely clear from the appellants' briefs precisely in what way or to what effect the Court of Chancery purportedly failed to give the Maryland orders full faith and credit. But the appellants appear to argue that the Court of Chancery's determination of the ownership of the cottage was inconsistent with the following aspects of the 2014 Maryland orders: (i) the statement in the November 2014 settlement agreement, which was incorporated into the Maryland order dated December 3, 2014, that Mestre is a third-party beneficiary of a 1992 agreement between Dorothea and Albert; (ii) the term in the August 2014 settlement agreement, which was incorporated into the Maryland order dated August 26, 2014, that provided that Vincent would execute a quitclaim deed to Mestre, as

---

[13] *See generally* RESTATEMENT (SECOND) OF CONFLICT OF LAWS: Intro. Note (observing that a "state must have personal jurisdiction over a defendant in order to impose upon him through its courts a personal liability or obligation in favor of the plaintiff," but that where "the purpose of an action is not to impose a personal liability or obligation on anyone but to affect the interests of all persons in a thing," *in rem* jurisdiction allows a state to "render through its courts a valid judgment where it has jurisdiction over the thing even though it may not have personal jurisdiction over the persons whose interests are affected").

[14] Opening Brief at 18.

trustee, with respect to the cottage; (iii) the creation of the Trust and appointment of Mestre as trustee; and (iv) the provision in the Maryland order dated August 26, 2014 reserving to the Maryland Court exclusive and continuing jurisdiction over all disputes involving the Trust and the trustee.[15]

(16) We disagree. The Full Faith and Credit Clause requires "that a judgment which was conclusive in the state where it was rendered must be received as conclusive in every other state."[16] Thus, a state court must give a final judgment rendered by the courts of another state the same effect as it would be given by the courts of the state by which it was rendered.[17] Whether or not the 2014 Maryland orders are final judgments that are entitled to full faith and credit,[18] the Court of

---

[15] Opening Brief at 2.

[16] *Kent County Md. v. Shepherd*, 713 A.2d 290 (Del. 1998) (discussing the ruling of the United States Supreme Court in *Mills v. Duryee*, 11 U.S. (7 Cranch) 481, 3 L. Ed. 411 (1813)).

[17] 28 U.S.C. § 1738. *See also Baker v. Gen. Motors Corp.*, 522 U.S. 222, 232-33 (1998) (discussing the Full Faith and Credit Clause).

[18] The 2014 Maryland orders did not fully resolve the action in which they were issued—they merely dismissed certain claims against one of the defendants in the case. "Of course, it is thoroughly understood that the full faith and credit clause of the Constitution applies to final judgments which are unconditional and certain, or capable of being made so, and remaining in full force and effect in the State where rendered." *Coane v. Girard Trust Co.*, 35 A.2d 449, 451 (Md. 1944). "It is clear that when there is a disposition of all claims against all parties, there is a final judgment" and "an order or other form of decision that adjudicates less than the entire claim, or adjudicates the rights and liabilities of fewer than all parties to the action, is not a final judgment." *Miller & Smith at Quercus, LLC v. Casey PMN, LLC*, 987 A.2d 1, 8 (Md. 2010). In this case, we need not decide whether the 2014 Maryland orders were final judgments under Maryland law, because, to the extent the Court of Chancery's ruling conflicts with those orders, the Court gave them the same deference as the Maryland Court gave them in 2016.

11

Chancery gave them appropriate effect. For example, the Maryland courts clearly did not consider the statement in the November 2014 settlement agreement that Mestre is a third-party beneficiary of a 1992 oral agreement with respect to the property to be a conclusive determination of that issue, because the Maryland Court in 2016 conducted a trial on that issue and ruled against Mestre. Thus, the Court of Chancery gave the same effect to the 2014 Maryland orders as the Maryland Court gave them.

(17) Nor did the Court of Chancery fail to give appropriate deference to the other aspects of the 2014 Maryland orders. The Court's ruling did not conflict with the term of the August 2014 settlement agreement providing that Vincent would execute a quitclaim deed—indeed, it appears that he in fact executed the quitclaim deed. In any event, the 2014 Maryland orders did not determine that Vincent had any interest in the property, and the Court of Chancery's determination that he does not have such an interest therefore does not conflict with those orders. Similarly, the Court of Chancery did not make any ruling regarding the creation or validity of the Trust, and the Court's decision quieting title to the cottage did not affect the Maryland Court's continuing jurisdiction over the Trust.

12

(18) The appellants also assert that the Court of Chancery erroneously gave preclusive effect to the 2016 decision of the Maryland Court.[19] In that decision, the Maryland Court, applying Delaware law, determined that Mestre, the plaintiff in that case, had not demonstrated by clear and convincing evidence that there was a 1992 oral agreement between Dorothea and Albert regarding the subject property. The Maryland Court therefore denied Mestre's claim for declaratory judgment that there was a valid and enforceable oral agreement—as well as all the other requests for relief, which were predicated on the existence of an oral contract—and entered judgment in favor of the defendant in that case, David.

(19) The Court of Chancery did not err by giving preclusive effect to the 2016 decision of the Maryland Court. Under Delaware choice-of-laws principles, a Delaware court will "give the judgments of another state court the same preclusive effect as would a court in that state."[20] Under Maryland law, collateral estoppel bars relitigation of an issue if: (i) the identical issue was decided in the prior case; (ii)

---

[19] In its oral ruling, the Court of Chancery stated that the Maryland Court's 2016 decision concerning the oral agreement was "res judicata here." In our view, the applicable preclusive principle is collateral estoppel. "Collateral estoppel and res judicata are related principles of law. Res judicata bars a suit involving the same parties based on the same cause of action. Collateral estoppel prohibits a party from relitigating a factual issue that was adjudicated previously. Accordingly, the collateral estoppel doctrine is referred to as the issue preclusion rule." *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999). This Court may affirm the Court of Chancery's ruling "on the basis of a different rationale than that which was articulated by the trial court." *Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1390 (Del. 1995).

[20] *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1217 (Del. 1991).

there was a final judgment on the merits; (iii) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (iv) the party against whom collateral estoppel is asserted had a fair opportunity to be heard on the issue.[21]

(20) In this case, Mestre asserted a claim to title based on the alleged 1992 oral contract. Mestre was the plaintiff in the Maryland action and had a fair opportunity to be heard on that issue. After a trial, the Maryland Court decided that Mestre had not proven the existence of an oral contract, and entered a final judgment in favor of the defendant. The Court of Chancery did not err by concluding that Mestre was precluded from relitigating the issue in this case.

*Discovery Concerning Equitable Defenses*

(21) The appellants argue that the Court of Chancery erred by deciding the quiet title action without allowing the appellees to conduct discovery concerning their assertions that the claim was barred by laches, the statute of limitations, or the doctrine of unclean hands. The appellants contend that this action was time barred because David "was aware of a claim to quiet title in 2004 when he discussed the issue with David Baker, Esq., his estate counsel."[22] Given the history of litigation

---

[21] *Caldor, Inc. v. Bowden*, 625 A.2d 959, 970-71 (Md. 1993).

[22] Opening Brief at 30. *See also In re Estate of Branson*, 2010 WL 3449235 (Del. Ch. Sept. 1, 2010) ("[David] insinuated [in his trial testimony] that the Estate might have brought a quiet title action [in 2004] had Vincent not first filed this lawsuit.").

among the parties, it is not apparent what additional facts possibly could have been discovered that would have influenced the analysis of the timeliness of the claims. The Court of Chancery has repeatedly found that Vincent has no cognizable interest in the property.[23] Despite those rulings, Vincent executed a quitclaim deed from Vincent to Mestre in October 2014, again clouding the title. Less than a year later, the plaintiffs brought suit in the Court of Chancery on September 15, 2015, and they filed an amended complaint that added the *in rem* cause of action on May 20, 2016. The Court concludes that the action was not time barred.

(22)   The appellants' arguments concerning unclean hands are an attempt to relitigate the parties' prior disputes. The Court will not address them further.

*The Decision Quieting Title*

(23)   The appellants argue that the Court of Chancery erred by granting quiet title relief on summary judgment because there were disputed issues of material fact concerning the ownership of the property. This Court reviews the Court of

---

[23] *Branson v. Branson*, 2013 WL 3789755 (Del. Ch. July 19, 2013), *aff'd*, 2014 WL 1512792 (Del. Apr. 15, 2014); *In re Estate of Branson*, 2010 WL 3449235 (Del. Ch. Sept. 1, 2010), *aff'd sub nom. Branson v. Branson*, 2011 WL 6141029 (Del. Dec. 9, 2011). On two occasions, the Court of Chancery has ordered Vincent to pay the appellees' attorneys' fees because of his vexatious litigation conduct or frivolous arguments. *In re Estate of Branson*, 2014 WL 1600518 (Del. Ch. Apr. 22, 2014), *aff'd sub nom. Branson v. Branson*, 2014 WL 7041784 (Del. Dec. 12, 2014); *Branson v. Branson*, 2013 WL 4773723 (Del. Ch. Aug. 12, 2013). The Superior Court has also done so once, and this Court has affirmed. *See Branson v. Branson*, 2013 WL 1164827 (Mar. 19, 2013) (affirming Superior Court award of attorneys' fees because Vincent's abuse of process complaint was a frivolous attempt to relitigate issues already decided by the Court of Chancery).

15

Chancery's granting of summary judgment *de novo*. We view the evidence, and all reasonable inferences taken therefrom, in the light most favorable to the non-moving party and determine whether an issue of material fact exists such that summary judgment was improper.[24]

(24) There are two objectors here—Vincent and Mestre. As discussed above, the Court of Chancery decided in 2010 that Vincent had no interest in the cottage and, in a separate case, quieted title *in personam* as to Vincent on July 19, 2013. This Court affirmed both decisions. The appellants do not claim that Vincent acquired any interest after July 19, 2013. Thus, it is clear that Vincent has no ownership interest in the property.

(25) Mestre asserts two factual grounds for her claim to title. First, she asserts that she presented to the Court of Chancery a title abstract showing that she has "good title as Trustee of The Ten North Fourth Street [Trust] pursuant to Final Maryland Orders recorded in the Land Records of Sussex County." Second, she contends that under "the 2014 Maryland Order, Lee Mestre and all grandchildren are third-party beneficiaries of a 1992 Agreement between their grandmother, Dorothea (75%) and their Uncle Albert (25%) when both were the undisputed

---

[24] *State Farm Mut. Auto. Ins. Co. v. Davis*, 80 A.3d 628, 632 (Del. 2013).

16

equitable owners of the Beach home."[25] Neither the title abstract nor Mestre's reliance on the 1992 Agreement present an issue of material fact that warrants reversal.

(26) The title abstract reveals that David J. Branson (21.73%), Albert E. Branson Jr. (46.4%), and Robert Branson (31.87%) hold record title as tenants in common, based on a quitclaim deed from David J. Branson, executor of the estate of Dorothea C. Branson, dated July 25, 2013 and recorded August 6, 2013. That aspect of the abstract is consistent with the rulings of the Court of Chancery in 2010 and 2013. The abstract further indicates that any interest that Mestre has in the property arises from a quitclaim deed from Vincent to Mestre dated October 8, 2014 and recorded October 24, 2014. Because, as discussed above, Vincent had no ownership interest in the property to convey in 2014, the title abstract does not raise a material issue of fact such that summary judgment should not have been granted.

(27) Mestre's reliance on the alleged 1992 Agreement is similarly unavailing. As discussed above, the Maryland Court determined, after a trial, that Mestre had failed to prove the existence of any 1992 Agreement, and Mestre is precluded from relitigating the existence of that agreement in this case.

***

---

[25] Opening Brief at 1.

(28) All the other arguments raised by the appellants were not fairly presented to the Court of Chancery in the first instance, are not sufficiently articulated in the briefing on appeal, are inconsistent with the record, constitute attempts to relitigate the parties' prior disputes, or are entirely speculative, and therefore do not provide a basis for reversal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice